400 So.2d 80 (1981)
Barbara Ann BERRY, Individually and As a Personal Representative of the Estate of Lisa Lynn Berry, Appellant,
v.
STATE of Florida, Appellee.
No. 78-2182.
District Court of Appeal of Florida, Fourth District.
June 3, 1981.
Rehearing Denied July 15, 1981.
*82 Robert L. Gossett of Bunin & Gossett, Hollywood, for appellant.
Jim Smith, Atty. Gen., and Joseph Belitzky, Asst. Atty. Gen., Tallahassee, for appellee.
HURLEY, Judge.
This is an appeal from an order dismissing plaintiff's complaint for damages against a judge, a state attorney, and the members of the Florida Parole and Probation Commission. We affirm.
The events giving rise to this case commenced on October 22, 1976, when a parolee named James Franklin Rose abducted, brutally beat, and murdered eight year old Lisa Lynn Berry. Rose was subsequently convicted and sentenced for the killing. Thereafter, Lisa's mother, Barbara Ann Berry, instituted suit against various state officials alleging that they had been negligent in dealing with Rose and that their negligence proximately caused her daughter's death. The defendants included: (1) James M. Reasbeck, a circuit judge in the Seventeenth Judicial Circuit; (2) the State Attorney for the Seventeenth Judicial Circuit; and (3) the nine members of the Florida Parole and Probation Commission. Defendants filed individual motions to dismiss which were granted by the trial court and which generated this appeal.

I
The common thread running through all counts of the complaint is that James Franklin Rose was a recidivist or multiple offender and this fact was known to each defendant. Taking the defendants separately, we begin with Judge Reasbeck who was sued in counts two, three and four. Count two alleged that Judge Reasbeck breached a duty imposed by Section 775.11(3), Florida Statutes (1969), by failing to call Rose's recidivism to the attention of the prosecuting attorney. Count three charged that Judge Reasbeck breached a statutory duty imposed by Section 775.09, Florida Statutes (1969), by failing to sentence Rose as a recidivist or multiple offender. And, finally, count four alleged a breach of a statutory duty by the court's failure to order that Rose be treated as a mentally disordered sex offender pursuant to Section 917.13 et seq., Florida Statutes (1969).
Appellant argues that each of the foregoing judicial acts or omissions was essentially ministerial or operational-level activity and, consequently, in accord with Section 768.28, Florida Statutes (1979), which grants a limited waiver of sovereign immunity, appellant contends that Judge Reasbeck is liable for money damages because of his failure to comply with mandatory statutory requirements which, in turn, proximately contributed to her daughter's injury and death.
In evaluating these claims, we first note that Section 768.28's waiver of sovereign immunity applies to "state agencies or subdivisions" which, by definition, include "the executive departments, the Legislature, the judicial branch, and the independent establishments of the state... ."[1] (Emphasis supplied.) As noted in Neilson v. Department of Transportation, 376 So.2d 296, 297 (Fla. 2d DCA 1979), "[a]ll units of government are now liable for their tortious conduct." Thus, the statute is all-embracing and applies to the three branches of government. With respect to the judicial branch, however, it is subject to a crucial limitation. Pursuant to our responsibility to avoid a holding of unconstitutionality if a fair construction of the statute can be made within constitutional limits, State v. Beasley, 317 So.2d 750 (Fla. 1975), we hold that Section 768.28 does not abrogate the common law principle of judicial immunity. This doctrine *83 which insures that judges are immune from liability for damages for acts committed within their judicial jurisdiction is essential to the preservation of an independent judiciary. Indeed, the tripartite concept of our government forbids the destruction of judicial immunity at the hands of either of the other two branches of government.[2]
The principle of judicial immunity traces its roots to the earliest days of the common law and emerged in American jurisprudence with the landmark case of Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872). There, the court recognized that it was "a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." Id. at 347. For that reason the Court held that "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." Id. at 351. Moreover, this has been the consistent and uniform holding of the Florida courts.[3] See also Dennis v. Sparks, ___ U.S. ___, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980); Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978).
The rationale underlying the principle of judicial immunity was ably set forth by Judge Gee in Sparks v. Duval County Ranch Co., 604 F.2d 976, 979-80 (5th Cir.1979) (en banc), aff'd sub nom. Dennis v. Sparks, supra:
[T]he absolute immunity that judges enjoy exists for the benefit of the judicial system and of the public, not for that of the judge. Only a hero could exercise an unfettered judgment while facing, day after day and case after case, the prospect of personal ruin implicit in permitting every losing party to sue him for damages. There have never been enough heroes to go around, and a sound policy must deal with the prospect that some who occupy the bench may not be of that ilk.
In this imperfect world, however, where even the moon has a dark side, this manifestly necessary policy has the unfortunate effect of insulating not only the robe, but the person within it, from being called to account for actions that may be illegal, even corrupt, as is alleged here. This undesirable side effect of an otherwise valuable prescription can, as to the magistrate himself, be safely mitigated only slightly. All authorities recognize that when a judge acts in a "clear absence of all jurisdiction" he is not protected. But any broader or less explicit inroad upon the robe's immunity in an attempt to reach its wearer would invite recurring attempts at enlargement, ruinous in terms of judicial time and funds expended to defend  even successfully  against them. Thus the rule of judicial immunity from damages, with its single, bright-line exception, is as broad as, but no broader than, is necessary. (Footnote omitted.)
In summary, we hold that the enactment of Section 768.28 did not abrogate the common law principle of judicial immunity, and, consequently, judges continue to enjoy absolute immunity from damages liability for acts performed in the course of their judicial capacities unless such acts are undertaken with a clear absence of all jurisdiction. To paraphrase Justice Jackson, it is not a tort for the judiciary to judge.[4] *84 Therefore, since it is evident from the plaintiff's complaint that Judge Reasbeck had jurisdiction when he took or failed to take the actions complained of, the dismissal of counts two, three and four was correct.

II
Next, we turn to count one which alleged negligence on the part of the State Attorney for the Seventeenth Judicial Circuit. The gist of the complaint is that the State Attorney was mandated to prosecute Rose as a multiple offender and his failure to do so constitutes actionable negligence. Again, we reject appellant's contention that the adoption of Section 768.28, Florida Statutes (1979), abrogated the long-held common law immunity of public prosecutors. For reasons of public policy, a prosecutor enjoys absolute immunity for damages when the acts within the scope of his prosecutorial duties. The rationale for such immunity was set forth by the court in Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976):
The common-law immunity of a prosecutor is based upon the same considerations that underlie the common-law immunities of judges and grand jurors acting within the scope of their duties. These include concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust. One court expressed both considerations as follows:
"The office of public prosecutor is one which must be administered with courage and independence. Yet how can this be if the prosecutor is made subject to suit by those whom he accuses and fails to convict? To allow this would open the way for unlimited harassment and embarrassment of the most conscientious officials by those who would profit thereby. There would be involved in every case the possible consequences of a failure to obtain a conviction. There would always be a question of possible civil action in case the prosecutor saw fit to move dismissal of the case... . The apprehension of such consequences would tend toward great uneasiness and toward weakening the fearless and impartial policy which should characterize the administration of this office. The work of the prosecutor would thus be impeded, and we would have moved away from the desired objective of stricter and fairer law enforcement." Pearson v. Reed, 6 Cal. App.2d 277, 287, 44 P.2d 592, 597 (1935). Id. at 422-23, 96 S.Ct. at 991-92 (footnote omitted).
Our sister court addressed this issue in Weston v. State, 373 So.2d 701, 703 (Fla. 1st DCA 1979):
It is necessary to the judicial process in the enforcement of the criminal laws of the state that the state attorney be free from any apprehension that he or she may subject the state to liability for acts performed in the exercise of the discretionary duties of the office. Such acts require the exercise of basic policy evaluation, judgment and expertise in determining whether or not a charge should be made for violation of the state's criminal laws.
Accordingly, we join with the First District and hold that the conduct of a state attorney in the exercise of his prosecutorial duties qualifies as a discretionary governmental function the performance of which is not affected by the statute waiving sovereign immunity. Therefore, the trial court in the case at bar was correct in dismissing count one.

III
Finally, we turn to counts five and six which named the members of the Florida Parole and Probation Commission as defendants. Count five alleged that the commission negligently failed to comply with Section 775.11(3), Florida Statutes (1969), which requires that:
Whenever it shall become known to any warden or prison, probation, parole or police officer or other peace officer, that *85 any person charged with or convicted of a felony has been previously convicted within the meaning of § 775.09 or 775.10 he shall forthwith report the facts to the prosecuting attorney of the county.
We hold that the court's dismissal of this count was proper for the statute has no application under the facts of this case and does not impose a duty on the individual members of the commission to report information to the prosecuting attorney. The statute, which was repealed on July 1, 1975, was obviously designed to facilitate the transfer of information at a time when it would be of use to the prosecuting attorney. For example, a probation officer, compiling a pre-sentence report, would have been required to disclose a history of prior convictions, presumably so that the state attorney could determine whether to seek enhanced punishment under the recidivist statutes. The commission members, however, would have reason to be advised of the defendant's history only in relation to his consideration for parole, certainly at a time when sentencing considerations are concluded, and when it would have been useless to communicate such information to the original prosecuting attorney. Thus, the statute did not apply to the individual members of the Parole and Probation Commission.
Lastly, we consider count six which charged that the members of the Florida Parole and Probation Commission negligently paroled Rose in violation of the standard established in Section 947.18, Florida Statutes (1969), which provided that:
No person shall be placed on parole merely as a reward for good conduct or efficient performance of duties assigned in prison. No person shall be placed on parole until and unless the commission shall find that there is reasonable probability that, if he is placed on parole, he will live and conduct himself as a respectable and law abiding person, and that his release will be compatible with his own welfare and the welfare of society. No person shall be placed on parole unless and until the commission is satisfied that he will be suitably employed in self-sustaining employment, or that he will not become a public charge. The commission shall determine the terms upon which such persons shall be granted parole.
Initially, we must determine whether the enactment of Section 768.28, Florida Statutes (1979) constitutes a waiver of sovereign immunity in this area. The Supreme Court provided the analytical backdrop to this question in Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010, 1022 (Fla. 1979), wherein it held:
[A]lthough section 768.28 evinces the intent of our legislature to waive sovereign immunity on a broad basis, nevertheless, certain "discretionary" governmental functions remain immune from tort liability. This is so because certain functions of coordinate branches of government may not be subjected to scrutiny by judge or jury as to the wisdom of their performance. In order to identify those functions, we adopt the analysis of Johnson v. State, [69 Cal.2d 782, 73 Cal. Rptr. 240, 447 P.2d 352 (1968)], which distinguishes between the "planning" and "operational" levels of decision-making by governmental agencies. In pursuance of this case-by-case method of proceeding, we commend utilization of the preliminary test iterated in Evangelical United Brethren Church v. State, [67 Wash.2d 246, 407 P.2d 440 (1965)], as a useful tool for analysis.
The Court offered this succinct distinction between planning and operational level functions:
Planning level functions are generally interpreted to be those requiring basic policy decisions, while operational level functions are those that implement policy. Id. at 1021.
The four preliminary considerations which were endorsed by the Court in Commercial Carrier are enumerated in Evangelical United Brethren Church v. State, 67 Wash.2d 246, 407 P.2d 440, 445 (1965):
(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would *86 not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision? If these preliminary questions can be clearly and unequivocally answered in the affirmative, then the challenged act, omission, or decision can, with a reasonable degree of assurance, be classified as a discretionary governmental process and nontortious, regardless of its unwisdom. If, however, one or more of the questions call for or suggest a negative answer, then further inquiry may well become necessary, depending upon the facts and circumstances involved.
Unquestionably, the decision to grant or withhold parole requires the exercise of discretion. Yet, we are loathe to ascribe talismanic effect to the term "discretion." As Judge Goldberg noted in Smith v. United States, 375 F.2d 243, 246 (5th Cir.1967), "[m]ost conscious acts of any person whether he works for the government or not, involve choice. Unless government officials (at no matter what echelon) make their choices by flipping coins, their acts involve discretion in making decisions." Thus, resolution of the issue at hand requires deeper analysis. In this respect, we find it significant that the United States Supreme Court has recognized the important role which discretion plays in the parole decision-making process and accordingly has held that a state may clothe its parole officials with absolute immunity to insure the uninhibited exercise of a parole authority's discretion. See Martinez v. California, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), rehearing denied, 445 U.S. 920, 100 S.Ct. 1285, 63 L.Ed.2d 606 (1980).
Applying the analysis recommended in Commercial Carrier Corp. v. Indian River County, supra, we conclude that the determination to grant parole is a discretionary, planning level decision which does not subject the state to tort liability. See Moore v. Florida Parole and Probation Commission, 289 So.2d 719 (Fla.), cert. denied, 417 U.S. 935, 94 S.Ct. 2649, 41 L.Ed.2d 239 (1974); Wright v. State, 342 So.2d 565 (Fla. 1st DCA 1977). In reaching this decision, we have carefully considered the recent opinion in Payton v. United States, 636 F.2d 132 (5th Cir.1981), which permitted a cause of action to be prosecuted against the United States Parole Board for negligent parole of a federal prisoner. While we agree with most of the analytical framework developed by the court in Payton, we also believe that its application to the Florida parole process would corroborate the conclusion that the decision to grant or disapprove parole in this state is a planning level or judgmental function. We note, however, that in reaching this conclusion we have confined ourselves to the specified statute and allegations in plaintiff's complaint. We expressly do not decide the question whether the Parole and Probation Commission would enjoy immunity in all instances including, for example, the negligent parole of a prisoner in direct contravention of a legislatively crafted and judicially imposed mandatory minimum sentence.
Accordingly, the order under appeal is AFFIRMED.
MOORE and BERANEK, JJ., concur.
NOTES
[1] § 768.28(2), Fla. Stat. (1979).
[2] See Oppenheimer v. Ashburn, 173 Cal. App.2d 624, 343 P.2d 931 (1959).
[3] See Williams v. Sepe, 487 F.2d 913 (5th Cir.1973); Farish v. Smoot, 58 So.2d 534 (Fla. 1952); Beckham v. Cline, 151 Fla. 481, 10 So.2d 419 (1942); McDaniel v. Harrell, 81 Fla. 66, 87 So. 631 (1921); Rivello v. Cooper City, 322 So.2d 602 (Fla. 4th DCA 1975); Silvers v. Drake, 188 So.2d 377 (Fla. 1st DCA 1966); Waters v. Ray, 167 So.2d 326 (Fla. 1st DCA 1964).
[4] "Of course, it is not a tort for the government to govern... ." Dalehite v. United States, 346 U.S. 15, 57, 73 S.Ct. 956, 979, 97 L.Ed. 1427 (1953) (Jackson, J., dissenting).