612 So.2d 586 (1992)
Tina PARROTINO, as personal Representative of the Estate of Diana L. McFarland, Appellant,
v.
The CITY OF JACKSONVILLE, Florida, a Municipal Corporation, and the Office of the State Attorney, Fourth Judicial Circuit of Florida, Appellees.
No. 89-3210.
District Court of Appeal of Florida, First District.
December 15, 1992.
Rehearing Denied January 20, 1993.
*587 Darryl D. Kendrick, Jacksonville, for appellant.
James L. Harrison, Gen. Counsel and David C. Carter, Asst. Gen. Counsel, Jacksonville, for City of Jacksonville.
Robert E. Warren of Taylor, Moseley & Joyner, Jacksonville, for Office of the State Atty.
ALLEN, Judge.
The appellant, as personal representative of the estate of Diana L. McFarland, challenges the dismissal of her complaint against the appellees, the City of Jacksonville and the Office of the State Attorney, Fourth Judicial Circuit. The appellant alleged in her complaint that the appellees had a duty to protect McFarland from attack by James Wilson, and that their breach of that duty proximately caused McFarland's death. In dismissing the complaint with prejudice for failure to state a cause of action, the court found that the appellees' acts and omissions were discretionary and that McFarland was a member of the general public to whom the appellees owed no duty of care. We agree that the allegations in the complaint do not establish any duty of care owed by the City of Jacksonville, but we find the facts sufficient *588 to allege a duty on the part of the Office of the State Attorney. Because the challenged acts of the Office of the State Attorney were operational in nature, we conclude that it enjoys no immunity from suit, and, therefore, we reverse the judgment entered in its favor.
In considering the appellees' motions to dismiss, the trial court was required to accept as true the factual allegations of the complaint. See Hochman v. Lazarus Homes Corp., 324 So.2d 205 (Fla. 3d DCA 1975). The complaint relates that McFarland terminated a personal relationship with James Wilson in the summer of 1986. Wilson, who has an extensive criminal history including acts of violence, then began to harass and threaten McFarland and her family. Between July and November of 1986, the City of Jacksonville police were summoned three times after Wilson attacked, harassed, or threatened McFarland or her family. On each occasion, the police were provided information concerning Wilson. Wilson publicly threatened McFarland's life during one of these incidents. The police advised McFarland to make a report through the Domestic Violence Program of the Office of the State Attorney and explained that such a report was necessary before they could protect her from Wilson.
McFarland contacted the Office of the State Attorney but was told that her dispute with Wilson was a police matter. On a later visit to the Office of the State Attorney in November, McFarland made a report through the Domestic Violence Program as she had been advised to do. Upon her request for protection from Wilson, she was assured that the Office of the State Attorney would act on her behalf to obtain a restraining order and assist the police in protecting her from further harassment or violence. McFarland relied upon these assurances and did not seek other legal action or means of protection. The Office of the State Attorney subsequently misplaced or misfiled the documents relating to her difficulties with Wilson. Consequently, no court order was sought and no action was taken in McFarland's behalf.
On four occasions between December of 1986 and March of 1987, Wilson again attacked, harassed, or threatened McFarland or her family. As before, the Jacksonville police were summoned each time and provided information concerning Wilson. On one occasion, Jacksonville police officers accompanied McFarland while she retrieved items of personal property from Wilson's residence. Wilson threatened her life in the officers' presence. In May of 1987, Wilson shot and killed McFarland. Thereafter, the appellant sued the appellees, alleging that their negligence was the proximate cause of McFarland's death.
In determining the sufficiency of the appellant's complaint, the initial question is whether the appellees owed a duty of care to McFarland. See City of Pinellas Park v. Brown, 604 So.2d 1222 (Fla. 1992); Kaisner v. Kolb, 543 So.2d 732 (Fla. 1989). In Trianon Park Condominium Ass'n, Inc. v. City of Hialeah, 468 So.2d 912 (Fla. 1985), the court explained that governmental officials and employees responsible for the "enforcement of laws and protection of the public safety" usually owe no duty of care to an individual member of the general public. Trianon, 468 So.2d at 919-20. That is so because
there is not now, nor has there ever been, any common law duty for either a private person or a governmental entity to enforce the law for the benefit of an individual or a specific group of individuals. In addition, there is no common law duty to prevent the misconduct of third persons.
Trianon, 468 So.2d at 918.
Despite this general proposition, the court in Trianon recognized that, under certain circumstances, a governmental entity engaged in law enforcement and public safety functions will owe a duty of care to a member of the public. Specifically, if there is an underlying common law or statutory duty of care with respect to the alleged negligent conduct, a governmental entity engaged in law enforcement and public safety functions will be charged with a duty of care. Trianon, 468 So.2d at 917. For example, governmental entities engaged *589 in law enforcement have always owed a common law duty of care in the operation of motor vehicles and the handling of firearms in connection with their law enforcement activities. Trianon, 468 So.2d at 920.
In Everton v. Willard, 468 So.2d 936 (Fla. 1985), the court recognized that while a police officer engaged in making arrests and enforcing the law will not ordinarily owe a duty of care to any particular member of the public, if a special relationship exists between an individual and a governmental entity engaged in a police function, there may be a duty of care owed to the individual. Such a special relationship exists, for example, when police accept the responsibility to protect a person who has assisted them in the arrest or prosecution of criminal defendants and that person is in danger due to his assistance. Everton, 468 So.2d at 938. As explained in the Restatement (Second) of Torts § 315(b) (1965),
There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right to protection.

(emphasis added).
The Jacksonville police and the Office of the State Attorney were performing law enforcement and public safety functions at all relevant times herein, so the foregoing principles concerning duties of care are applicable to them. See State, Office of the State Attorney v. Powell, 586 So.2d 1180, 1183 (Fla. 2d DCA 1991) (applying the Trianon analysis to prosecutors who, like arresting officers, are law enforcement officials). We conclude that the factual allegations in the complaint do not provide a basis for finding a common law or statutory duty owed by the Jacksonville police to McFarland. In the absence of allegations supporting such a duty, the general rule discussed in Trianon is applicable, and, thus, the trial court correctly dismissed the complaint against the City of Jacksonville.
The allegations relating to the Office of the State Attorney, however, are different. The appellant alleged that the Office of the State Attorney promised to render services to McFarland, or, more specifically, that it agreed to secure a restraining order and assist the police in protecting her from further violence. Although the promise to assist the police was somewhat nebulous, the promise to secure a restraining order was a specific undertaking to render services to McFarland. Significantly, the appellant also alleged McFarland's reliance upon these promises, her failure to seek protection elsewhere, the misplacing of the documents by the Office of the State Attorney, and McFarland's resulting death.
The common law duty alleged in the complaint is set out in the Restatement (Second) of Torts § 323 (1965);
One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.
This duty of care and theory of recovery is recognized and applied in Florida. See, e.g., State, Dept. of Highway Safety & Motor Vehicles v. Kropff 491 So.2d 1252 (Fla. 3d DCA 1986); Blackmon v. Nelson, Hesse, Cyril, Weber & Sparrow, 419 So.2d 405 (Fla. 2d DCA 1982); Padgett v. School Bd. of Escambia County, 395 So.2d 584 (Fla. 1st DCA 1981); and Sheridan v. Greenberg, 391 So.2d 234 (Fla. 3d DCA 1981).
In Hartley v. Floyd, 512 So.2d 1022 (Fla. 1st DCA), rev. denied, 518 So.2d 1275 (Fla. 1987), we implicitly applied the above-quoted principles in affirming a final judgment entered against a county sheriff. There, the plaintiff's husband, James Floyd, drowned in the Gulf of Mexico after remaining *590 afloat beside the hull of his capsized fishing boat for approximately sixty hours. Almost seventeen hours before Floyd drowned, the plaintiff telephoned the Levy County Sheriff's Office to report that her husband had not returned when expected. After the plaintiff described her husband's vehicle, the deputy promised to have someone check the boat ramp to determine whether Floyd had returned from his fishing trip. When the plaintiff called back forty minutes later, the deputy falsely advised her that the boat ramp had been checked and that her husband's vehicle was not there. In reliance upon the promises and representations of the deputy, the plaintiff made no independent effort to locate her husband for the next seven hours. After waiting that period, the plaintiff contacted a nearby Coast Guard station and a search was initiated. The overturned boat was located, but, tragically, Floyd drowned some thirty minutes before the Coast Guard arrived.
We concluded that the sheriff owed the plaintiff a duty of care in Hartley because the risk of harm or loss had been increased due to her detrimental reliance upon the deputy's gratuitous but negligent undertaking to render services. The same duty of care has been asserted in the instant case. The allegations of the complaint that the Office of the State Attorney promised to secure a restraining order and that McFarland relied upon the promise and did not seek other legal action or means of protection sufficiently assert the (a) gratuitous undertaking to protect, (b) detrimental reliance, and (c) increased risk of harm elements under § 323 of the Restatement 2d of Torts. Accordingly, we conclude that the appellant has sufficiently alleged a duty of care owed by the Office of the State Attorney to McFarland. See also City of Pinellas Park v. Brown, 604 So.2d at 1225; McCain v. Florida Power Corp., 593 So.2d 500, 503 (Fla. 1992).
The allegations of the complaint in this case differ from the situation in State, Office of the State Attorney v. Powell, 586 So.2d 1180 (Fla. 2d DCA 1991), because the state attorney there had not undertaken to protect the plaintiff. Nevertheless, the Second District recognized that a state attorney could have "a duty to use reasonable care in providing protection to an individual if they voluntarily undertake that responsibility." Powell, 586 So.2d at 1184.
As suggested above, the duty analysis is the same whether the defendant is a governmental entity or a private individual. If the appellant had alleged that a private attorney had promised to secure a restraining order for McFarland but negligently failed to follow through on that promise, that McFarland had relied upon the promise, and that her death was proximately caused by its breach, there would be no doubt about whether a common law duty had been alleged. The duty is not in any way limited by the defendant's status as a governmental entity, because section 768.28(5), Florida Statutes, expressly provides that "[t]he state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances[.]"
The Office of the State Attorney next argues that the complaint does not sufficiently allege a causal nexus between its actions or omissions and McFarland's death. We disagree. We believe that the allegations of the complaint are sufficient to plead the existence of a causal nexus between the alleged actions and inactions of the Office of the State Attorney and McFarland's death. Whether the appellant can prove that such a causal nexus existed is an entirely different matter, which it is inappropriate to address incident to a motion to dismiss.
Having determined that the complaint adequately alleges a cause of action, we now turn to consideration of the governmental immunity defense asserted by the Office of the State Attorney. Under the common law, prosecutors enjoyed broad immunity.[1] But, since the enactment *591 of section 768.28, Florida Statutes, Florida's state attorney offices have a more limited immunity. State attorney offices, like other state agencies, are entitled to the defense of governmental immunity only when the act or omission involved is discretionary in nature, rather than operational. Brown, 604 So.2d at 1226; Kaisner, 543 So.2d at 736; Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979).[2] Thus, in the case before us, we must decide whether the acts or omissions alleged to have caused McFarland's death were exercises of governmental discretion.
The discretionary function exception is based upon the premise that "it would be an improper infringement of separation of powers for the judiciary, by way of tort law, to intervene in fundamental decisionmaking of the executive and legislative branches of government." Kaisner, 543 So.2d at 736-37. Thus, to be "discretionary," a governmental act must involve an exercise of executive or legislative power such that the court's intervention would inappropriately entangle it in fundamental questions of policy and planning. Brown, 604 So.2d at 1226; Kaisner, 543 So.2d at 737.
The Office of the State Attorney's decision to provide assistance to McFarland was a fundamental policy determination that was clearly discretionary in nature. Also discretionary was the appellee's decision about the nature of the assistance it would provide. Although the Office of the State Attorney had authority to seek a restraining order, see e.g., section 914.24, Florida Statutes, it was not obligated to do so. If the appellee had simply refused to provide assistance at the time of McFarland's report, or had chosen at that time not to seek a restraining order, there could have been no liability for those purely discretionary, policy determinations. The appellant's allegation that the appellee promised McFarland that it would secure a restraining order to protect her is all-important.
The appellant does not challenge the wisdom of the appellee's basic policy determination, she claims that its policy was carried out in a negligent manner. Specifically, she argues that the Office of the State Attorney made its discretionary policy determination in this case when it promised to secure the restraining order for McFarland, and, thereafter, its actions in implementation of that policy were purely operational. We agree. Although efforts to secure a restraining order require knowledge and training, the commencement of the action undertaken here would not involve fundamental governmental decisionmaking. Because the appellee's challenged conduct was operational in nature, it is not entitled to the protection afforded by the doctrine of governmental immunity. See Kaisner, 543 So.2d at 738 (concluding that the decision to stop a motorist for a traffic infraction is a discretionary governmental decision, but once the decision to stop is made, the way in which the stop is handled by a law enforcement officer is an operational activity); and Hartley, 512 So.2d at 1024; ("Once Deputy Legler agreed to perform the tasks his actions thereafter ceased to be discretionary actions and became merely operational level activities which must be performed with reasonable care and for which there is no sovereign immunity.").
We affirm the judgment entered in favor of the City of Jacksonville, we reverse the *592 judgment entered in favor of the Office of the State Attorney, and we remand this cause for further proceedings. However, because this case involves issues of great public importance, we certify the following questions to the supreme court:
1) DID A COMMON LAW DUTY OF CARE RUN FROM THE OFFICE OF THE STATE ATTORNEY TO THE VICTIM, MCFARLAND, DUE TO THE VICTIM'S RELIANCE TO HER DETRIMENT UPON THE VOLUNTARY ASSURANCES OF THE OFFICE OF THE STATE ATTORNEY THAT IT WOULD ACT ON HER BEHALF TO OBTAIN A RESTRAINING ORDER FOR THE PURPOSE OF PROTECTING HER FROM FURTHER HARASSMENT OR VIOLENCE BY JAMES WILSON?
2) IF SO, ARE THE ACTIONS AND OMISSIONS OF THE OFFICE OF THE STATE ATTORNEY IN CARRYING OUT ITS UNDERTAKING TO SECURE A RESTRAINING ORDER DISCRETIONARY ACTIVITIES FOR WHICH THE OFFICE OF THE STATE ATTORNEY IS IMMUNE FROM LIABILITY?
WENTWORTH, Senior Judge, concurs.
SMITH, J., concurs in part and dissents in part with written opinion.
SMITH, Judge, concurring in part, dissenting in part.
I concur with the majority's holding that the complaint does not state a cause of action against the City of Jacksonville. However, I dissent from the majority's holding that a cause of action is stated against the Office of the State Attorney.
The majority bases its holding with regard to the state attorney on the allegation that the Office of the State Attorney promised to render services to McFarland, or more specifically, that it agreed to secure a restraining order and assist police in protecting her from further violence. The majority notes further that the appellant alleged the decedent relied upon these promises, that she failed to seek protection elsewhere, that the state attorney misplaced documents pertaining to her case, and that the decedent died as a result.
The majority correctly states the rule announced in Trianon, supra, that if there is an underlying common law or statutory duty of care with respect to the alleged negligent conduct, a governmental entity engaged in law enforcement and public safety functions will be charged with that duty of care. Liability in the instant case is not grounded on any statutory duty. Instead, the majority concludes that a common law duty of care, such as the one set forth in Restatement (Second) of Torts § 323, was owed to the decedent. In my opinion, the majority errs in finding liability based on a common law duty of care.
The common law rule of immunity for prosecutors is "well settled." Imbler v. Pachtman, 424 U.S. 409, 424, 96 S.Ct. 984, 992, 47 L.Ed.2d 128 (1976). The rule was reaffirmed in Butz v. Economou, 438 U.S. 478, 510, 98 S.Ct. 2894, 2912, 57 L.Ed.2d 895 (1978), where the United States Supreme Court stated, quoting Imbler:
The common-law immunity of a prosecutor is based upon the same considerations that underlie the common-law immunities of judges and grand jurors acting within the scope of their duties.

(Emphasis added). The rule was subsequently reaffirmed in Virginia v. Consumers Union of the U.S., 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980), Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), and Nixon v. Fitzgerald, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982).
In Berry v. State, 400 So.2d 80, 84 (Fla. 4th DCA 1981), rev. denied, 411 So.2d 380 (Fla. 1981), the court unequivocally stated that the statutory waiver of sovereign immunity in section 768.28, Florida Statutes, did not abrogate "the long-held common law immunity of public prosecutors." The Berry court continued, "[f]or reasons of public policy, a prosecutor enjoys absolute immunity for damages when the [sic] acts within the scope of his prosecutorial duties." Id. (emphasis added). Accordingly, the court concluded, the prosecutor was immune from an action for damages arising *593 from his failure to prosecute as a multiple offender a defendant who, upon being paroled, beat and murdered an eight year-old child. Berry was cited with approval in Trianon, 468 So.2d at 920.
The majority fails to cite a single case which recognizes the existence of a common law duty on the part of prosecutors to seek injunctive relief on behalf of a potential crime victim.[3] More importantly, the majority fails to address the cases cited above which unequivocally hold that no common law duty of care exists with respect to prosecutors. Because no duty of care was owed by the state attorney to the decedent, liability cannot be premised on any negligence alleged to have occurred in the handling of the decedent's case. Kaisner v. Kolb, 543 So.2d 732 (Fla. 1989).[4]
In Trianon, the supreme court made clear that the common law duty of care embodied in section 323 of the Second Restatement does not apply to prosecutors acting within the scope of their authority.
"[T]here is not now, nor has there ever been, any common law duty for either a private person or a governmental entity to enforce the law for the benefit of any individual or a specific group of individuals. In addition, there is no common law duty to prevent the misconduct of third persons."
468 So.2d at 918. (Emphasis added).[5]
After concluding, erroneously, that the state attorney owed the decedent a duty of care, the majority finds no immunity exists under the discretionary/operational dichotomy. Essential to the majority's holding is the assumption that an act is transformed from a discretionary one for which immunity is provided, such as enforcement of laws and protection of public safety, into an operational one for which no immunity exists, simply by virtue of the fact that the action is undertaken. Such an assumption is contrary to the reasoning in Trianon, supra. A governmental entity's immunity from liability depends not upon whether the entity affirmatively chooses to act when it had the opportunity to decline to act. Immunity, instead, rests upon the character of the conduct in which the governmental entity is engaged or is capable of engaging. This is the principle upon which the United States Supreme Court relied in applying the doctrine of judicial immunity to bar an action against a judge under 42 U.S.C. § 1983 in Mireles v. Waco, ___ U.S. ___, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). The court held that a judge was judicially immune from suit for allegedly ordering police officers to bring an attorney before the judge, even though the judge allegedly directed the officers to carry out the order with excessive force. Said the court:
[5] Of course, a judge's direction to police officers to carry out a judicial order with excessive force is not a "function normally performed by a judge." Stump v. Sparkman, 435 U.S. 349, at 362, 98 S.Ct. [1099], at 1108 [55 L.Ed.2d *594 331 (1978)]. But if only the particular act in question were to be scrutinized, then any mistake of a judge in excess of his authority would become a "nonjudicial" act, because an improper or erroneous act cannot be said to be normally performed by a judge. If judicial immunity means anything, it means that a judge "will not be deprived of immunity because the action he took was in error ... or was in excess of his authority." Id., at 356, 98 S.Ct., at 1105. See also Forrester v. White, 484 U.S. 219, at 227, 108 S.Ct. [538], at 544 [98 L.Ed.2d 555 (1988)] (a judicial act "does not become less judicial by virtue of an allegation of malice or corruption of motive"). Accordingly, as the language in Stump indicates, the relevant inquiry is the "nature" and "function" of the act, not the "act itself." Id., 435 U.S., at 362, 98 S.Ct., at 1108. In other words, we look to the particular act's relation to a general function normally performed by a judge, in this case the function of directing police officers to bring counsel in a pending case before the court. (Emphasis added).
Id. ___ U.S. at ___, 112 S.Ct. at 288-89.
In Trianon, the supreme court specifically stated that

How a governmental entity, through its officials and employees, exercises its discretionary power to enforce compliance with the laws duly enacted by a governmental body is a matter of governance, for which there has never been a common law duty of care.

468 So.2d at 919 (emphasis added).
The supreme court further stated in Trianon,
[i]n considering governmental tort liability under these four categories, we find that there is no governmental tort liability for the action or inaction of governmental officials or employees in carrying out the discretionary functions described in categories I [legislative, permitting, licensing and executive officer functions] and II [enforcement of laws and protection of public safety] because there has never been a common law duty of care with respect to these legislative, executive and police power functions, and the statutory waiver of sovereign immunity did not create a new duty of care.
468 So.2d at 921 (emphasis added).
Public prosecutors enjoy immunity from suit for actions within the scope of their prosecutorial duties because it is in the public interest that they be free to concentrate their energies on the performance of their public duties, and to exercise their independent judgment required by the public trust, unhampered by the threat of harassment by an unfounded litigation. See Imbler v. Pachtman, 424 U.S. at 421, 96 S.Ct. at 991. To say that a prosecutor forfeits his common law immunity once he chooses to act in a matter in which he has discretion not to act is to emasculate the rule of immunity. Under the majority's reasoning, a prosecutor enjoys immunity only so long as he does nothing.[6] Stated differently, immunity for negligence exists only so long as there is no negligence. Such a position is illogical, and as stated, is contrary to Commercial Carrier and Trianon. It is also at odds with the holding in Mireles v. Waco, supra.
In State of Florida, Office of the State Attorney for the Thirteenth Judicial Circuit v. Powell, supra, the court recognized that liability for conduct on the part of the state attorney may be found when a special relationship exists between the prosecutor and another. In Powell, no special relationship, and hence no special duty, was found to exist on behalf of the plaintiff who was injured by her estranged husband against whom she was preparing to testify pursuant to a subpoena. Ms. Powell had received threatening letters from her husband and had turned these over to the state attorney's office, which began an investigation *595 to see if charges could be filed. The Powell court found that the state attorney, by issuing a subpoena to require the plaintiff's attendance at the husband's violation of probation hearing, did not undertake to protect the plaintiff and that the plaintiff was not in custody. Pointing out that in Kaisner, the injured plaintiff had been restrained by being detained at the roadside by investigating officers, the Powell court noted, by way of contrast, that Ms. Powell was never detained, and in fact, was injured outside the courthouse before she had checked in with the assistant state attorney. Further, there was no evidence that the state attorney's office ever agreed to protect Ms. Powell, and the state attorney's office had no policy to provide protection to witnesses. Under the circumstances, the court found that no special relationship existed to create a common law duty of care by the state attorney's office. Alluding to the "zone of risk" language of Kaisner, 543 So.2d at 735, the court stated:
However, we conclude that the actions of the state attorney did not create a foreseeable zone of risk for which they owed a duty to Ms. Powell. We conclude that the issuance of a subpoena to a witness to attend a court hearing, even when a witness has reason to be fearful and notifies the office issuing that subpoena of her fears, does not create a duty to protect or arrange protection for the witness upon one issuing that subpoena.
Powell, 586 So.2d at 1184-85.
In my view, contrary to the majority holding, the facts of the case before us do not permit application of the "special duty" basis for liability on the part of law enforcement officials, as discussed in Everton v. Willard, supra.[7] The Everton opinion indicates that a special duty is owed by a governmental entity when it places a person in peril or holds a person in custody or in some sort of restraint such that a person is unable to prevent harm from occurring. The supreme court in Everton offered, as an example, the scenario where "police accept the responsibility to protect a particular person who has assisted them in the arrest and prosecution of criminal defendants and the individual is in danger due to that assistance." 468 So.2d at 938 (emphasis added). See also Kaisner v. Kolb, 543 So.2d at 734 ("our courts have found liability or entertained suits after law enforcement officers took persons into custody, otherwise detained them, deprived them of liberty or placed them in danger").
The allegations of the complaint in the case before us do not provide a basis for concluding that a special relationship, and hence a special duty, existed. The decedent was not in danger because of conditions or circumstances created by the state attorney. Further, the conduct of consenting to seek a restraining order against Wilson is no different from the conduct undertaken by the state attorney when he expresses an intention to file a criminal information, or to seek a grand jury indictment upon receipt of a report by the victim of an assault or battery. Once a prosecutor undertakes the prosecution, it is illogical to assume  as would be required if the majority's reasoning is followed  that he incurs potential civil liability in tort in the event his negligence contributes to a failure to convict and the victim suffers additional wrong or injury at the hands of the defendant.
Worthy of note is DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), in which the court reviewed a summary judgment granted in favor of defendants in a 42 U.S.C. § 1983 *596 action brought by the mother of a child severely beaten by his father. In that case, the United States Supreme Court found no special relationship existed between the child and state officials, despite knowledge on the part of the state regarding the danger of child abuse, and despite the state's temporary custody of the child. In so finding, the court observed that "[w]hile the State may have been aware of the dangers that [the child] faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them." 489 U.S. at 201, 109 S.Ct. at 1006.
The same is true with respect to the decedent in the case at bar. There is no allegation that any inaction by the state attorney created the danger to the deceased. Indeed, the facts alleged in the complaint itself demonstrate that the same pattern of attack, harassment and threats by Wilson occurred both before and after McFarland's contact with the state attorney's office.[8] According to the complaint, Wilson harassed, threatened, or attacked McFarland on four separate occasions (not including the final fatal attack) after her visit to the State Attorney's Office, and on each occasion the police, not the state attorney, were summoned to the scene. These facts negate any inference that McFarland relied on the state attorney for protection. Moreover, unlike the situation in Hartley, there is no indication, other than sheer speculation, that any action by the state attorney's office would have prevented the decedent's death at the hands of her assailant.
I am unable to equate the act of giving false information causing a fatal delay in the rescue of a stranded fisherman, as in Hartley, with the failure of a state attorney to request a court, in its discretion, to issue a court order forbidding actions by a third party that are already prohibited by law, as in this case. I fully recognize the beneficial purposes which may be accomplished, in an appropriate case, through an injunction against domestic violence under section 741.30, Florida Statutes, the violation of which is punishable by indirect criminal contempt of court. However, it is unrealistic to conclude that the existence of an injunction would have provided a greater deterrent or protection in this case than the existing laws against unlawful homicide. It cannot be reasonably contended, in my view, that one not deterred by the threat of the death penalty for murder would be deterred by the threat of civil or indirect criminal contempt, the punishment for which cannot exceed six months in county jail, without jury trial, or the maximum of one year after trial by jury.
The majority states that it is unwilling to conclude, as a matter of law, that a causal nexus between the state attorney's actions or omissions and the decedent's death cannot be proved. However, as suggested above, I am of the view that even if it should be assumed that a trial court would have issued an injunctive order against Wilson, liability cannot be predicated on the part of the state attorney, under the facts alleged, on the assumption that "but for" the failure to obtain an injunction, Wilson would not have committed murder six months later. Although one may assume a *597 reasonable probability that a court would have granted the injunction, had one been timely sought, there is no certainty that this would have occurred. More importantly, there is no logical basis for assuming that the decedent's assailant would have obeyed such an injunctive order if granted. Given the tenuous chain of causation between the allegedly negligent conduct and the decedent's unfortunate death, I am of the view that liability cannot be established as a matter of law.
In conclusion, it is my view that the state attorney enjoys immunity for the consequences of acts and omissions within the scope of his prosecutorial duties, absent a breach of a special duty owed to a particular individual. A special duty does not arise from conduct within the scope of that authority except in circumstances in which a specific individual is placed in some peril by the conduct on the part of the state attorney's office. Accordingly, I would affirm the order dismissing the complaint in its entirety.
NOTES
[1] Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), discusses the common law immunity of prosecutors.
[2] Although Berry v. State, 400 So.2d 80 (Fla. 4th DCA 1981), contains language indicating that the common law immunity of prosecutors was not abrogated by the enactment of section 768.28, a careful reading of the decision reveals that the omission involved there was the prosecutor's failure to prosecute a person as a multiple offender, a purely discretionary matter. The court said the following:

Our sister court addressed this issue in Weston v. State, 373 So.2d 701, 703 (Fla. 1st DCA 1979):
It is necessary to the judicial process in the enforcement of the criminal laws of the state that the state attorney be free from any apprehension that he or she may subject the state to liability for acts performed in the exercise of the discretionary duties of the office. Such acts require the exercise of basic policy evaluation, judgment and expertise in determining whether or not a charge should be made for violation of the state's criminal laws.
Berry, 400 So.2d at 84 (emphasis supplied).
[3] None of the cases cited by the majority in which liability was premised upon section 323 of the Second Restatement, State, Dept. of Highway Safety & Motor Vehicles v. Kropff, supra, Blackmon v. Nelson, et al., supra, Padgett v. School Bd. of Escambia County, supra, and Sheridan v. Greenberg, supra, concern liability on the part of a prosecutor.
[4] The Fifth District affirmed without opinion in Russell v. State, 392 So.2d 91 (Fla. 5th DCA 1980), a summary judgment of no liability against a state attorney. The facts of the case, as recited in a subsequent opinion, Russell v. State, 417 So.2d 1119 (Fla. 5th DCA 1982), reveal that a suit was brought alleging that the state attorney negligently failed to secure the "preventive detention" of Ernest, Mary Jean Bradham's estranged husband, although the state knew that he had threatened to kill Bradham, and that this negligence was the proximate cause of Bradham's death at the hands of Ernest a few days later. Although the decision on the merits of this case is of doubtful precedential value, in that the facts and basis for the ruling on the merits are stated in the second case, which deals with a claim for attorney's fees under section 57.105, we nevertheless take notice of this case as an unsuccessful attempt to assert liability against a state attorney for alleged negligent failure to prevent a homicide.
[5] This principle is frequently applied in cases finding no tort liability for failure to provide police protection. See, Carroll J. Miller, Annotation, Governmental Tort Liability For Failure to Provide Police Protection To Specifically Threatened Crime Victim, 46 ALR 4th 948 (1986).
[6] According to the express language of the majority opinion, the civil liability of a prosecuting attorney, once he agrees to take action in pursuance of his prosecutorial function, is indistinguishable from that of a private attorney to his client. This statement alone demonstrates the majority's total disregard of the well-established doctrine of prosecutorial immunity. See, Imbler v. Pachtman, supra.
[7] The majority's reliance upon Hartley v. Floyd for its finding of a special duty is misplaced. As noted by the majority, the Hartley court implicitly relied upon § 323 of the Restatement 2d of Torts, pointing out that the risk of harm to the plaintiff's husband had been increased by the actions of the sheriff's deputy. The facts of the present case simply do not fall within the category of the "increase of the risk of harm" cases relied upon by the Hartley court. Significantly, unlike this case, Hartley did not involve an attempt to impose liability premised upon an alleged failure to provide protection from the criminal acts of a third party. Therefore, this case, unlike Hartley, should be analyzed under § 315(b) Restatement (Second) of Torts (1965), which requires a "special relation" which gives rise to a right to protection.
[8] The complaint alleges these facts: July 1986  Wilson attacked McFarland at a grocery store; police were called and assisted McFarland; August 1986  Wilson harassed McFarland at her apartment; police came and obtained information concerning Wilson's actions; November 1986  Wilson intentionally drove his truck into McFarland's automobile, causing damage; police were called and came to her residence, during which time Wilson made telephone threats against McFarland and her family; November 12, 1986  McFarland made application to the Office of the State Attorney and was told that a restraining order against Wilson would be obtained, forbidding any further contact with McFarland by Wilson; December 1986  Wilson again harassed McFarland at her residence, and police again came to the scene; January 1987  Wilson attacked McFarland inside a restaurant, and threatened her life in the presence of police summoned to the scene; February 1987  Wilson assaulted McFarland and threatened family members outside a Jacksonville lounge; police were summoned, conferred with McFarland and her relatives, and received information regarding Wilson; March 1987  McFarland was again attacked by Wilson, this time inside a Jacksonville lounge; the police were again summoned. The fatal attack came on May 26, 1988.