768 So.2d 1257 (2000)
Lawrence Scott ANDREWS, Appellant,
v.
The FLORIDA PAROLE COMMISSION and The Florida Department of Corrections, Appellees.
No. 1D98-1931.
District Court of Appeal of Florida, First District.
October 18, 2000.
*1258 John D. Middleton of Middleton & Prugh, P.A., Melrose, for Appellant.
Robert A. Butterworth, Attorney General, and Amelia L. Beisner, Assistant Attorney General, Tallahassee, for Appellees.
SMITH, LARRY G., Senior Judge.
Lawrence Scott Andrews appeals the dismissal of his complaint against the Florida Parole Commission (Commission) and the Department of Corrections (DOC) for false imprisonment and for negligent discharge of official duties. The trial court dismissed the complaint concluding both that sovereign immunity barred recovery, and that Andrews had been taken into custody and incarcerated by DOC under a facially valid warrant. We conclude that the actions of the Commission were quasi-judicial in nature and entitled to protection under the doctrine of judicial immunity. We further conclude that no action for false imprisonment can be maintained against DOC because, as shown by the allegations of the complaint itself, Andrews had been taken into custody and incarcerated by DOC based upon a presumptively valid warrant and commitment order issued by the Commission. We therefore affirm the order and judgment of dismissal; however, we certify to the Florida Supreme Court a question of great public importance concerning whether the Commission and DOC can be held liable for false imprisonment under circumstances such as were presented in this case.

Proceedings Below
Andrews' complaint for money damages based on his alleged wrongful imprisonment, alleged, in part, as follows:

*1259 7. Plaintiff was convicted of crimes occurring before and after October 1, 1988.
8. On April 1, 1991, the Plaintiff was sentenced to 30 months incarceration... in case number 88-642.... The criminal conduct in that case occurred prior to October 1, 1988.
9. Again, on April 4, 1991, Plaintiff was sentenced to 30 months on case numbers 90-574 and 91-25 ... which ran consecutive [to] the thirty months given in case number 88-642 referred to above. The criminal conduct in those cases occurred [after] October 1, 1988.
10. Upon expiration of the sentences through gain time on May 28, 1993, Plaintiff was released on conditional release to be supervised until December 25, 1995. This date was calculated by considering the two separate sentences as one 60 month sentence despite the fact that only the second thirty month sentence was subject to the provisions of Florida Statute § 947.1405(1) and (2). The first thirty month sentence was subject to provisions of § 944.291, Fla. Stat. which dictate that the inmate shall have no supervision by either Defendant.
11. On May 13, 1994, the First District Court of Appeal in Westlund v. Florida Parole Commission, 637 So.2d 52 (Fla. 1st DCA 1994) specifically held that it was illegal for [the Defendants] to include sentences for criminal conduct occurring prior to October 1, 1988 in their calculation of the length of conditional release.
12. Under Westlund, the maximum time that the Plaintiff could have been supervised to, and hence subject to revocation by Defendant COMMISSION was September 12, 1994.
13. Based on a warrant issued by Defendant Commission after September 12, 1994, the Plaintiff was returned to Defendant DOC custody on Defendant COMMISSION's first illegal warrant initially as a parole release violator on December 9, 1994 but then illegally was reinstated to conditional release by Defendant COMMISSION on January 31, 1995....
14. The Plaintiff again was illegally returned to Defendant DOC custody on December 28, 1995 on Defendant COMMISSION's void warrant and was given a tentative release date by Defendant DOC of November 11, 1997. The Defendants knew or should have known of the decision in Westlund when they considered Plaintiff's case at this time.
15. Within a very short time of his re-incarceration, Plaintiff filed many inmate grievances, both at the institutional level and Defendant DOC at Tallahassee Central Office complaining about the illegality of his incarceration and citing the Westlund case.
. . . .
23. Plaintiff filed a writ of habeas corpus, but prior to the Court's ruling, Defendant COMMISSION issued an emergency order dated October 16, 1996 which resulted in the unconditional release of the Plaintiff on October 17, 1996 from incarceration.
24. As a direct and proximate cause of [the Defendant's] actions or omissions, Plaintiff was falsely and illegally incarcerated....
DOC and the Commission moved to dismiss arguing that sovereign immunity shielded them from liability. The Commission also claimed that its actions were protected by the doctrine of judicial immunity.
In Westlund v. Florida Parole Comm'n, 637 So.2d 52 (Fla. 1st DCA 1994), we held that under the provisions of section 947.1405, Florida Statutes (1991), the
last date of conditional release supervision may lawfully be calculated with reference only to sentences imposed for offenses committed on or after October 1, 1988. Sentences imposed on account of ... offenses ... committed ... [before October 1,] 1988, cannot be the basis for determining ... [the] last date *1260 of conditional release supervision under the Act.
Id. at 54; see also Parole Comm'n v. Cooper, 701 So.2d 543, 545 (Fla.1997) ("[I]n Westlund v. Florida Parole Comm'n, 637 So.2d 52 (Fla. 1st DCA 1994), the First District correctly determined that sentences for uncovered offenses that were committed before the effective date of the Act are distinct from covered offense[s] committed after its effective date.").
Andrews' complaint alleged, consistent with the Westlund interpretation of section 947.1405 as applied to the facts here, that his last lawful date of conditional release supervision was September 12, 1994. As explained in Westlund, the gain time applied to reduce the period of incarceration under pre-October 1, 1988 offenses cannot be used in calculating the period of time an inmate is subject to conditional release supervision. See Westlund, 637 So.2d at 54. Notwithstanding this limitation on the Commission's authority to exercise supervision, the Commission at the time of Andrews' initial release established December 25, 1995 as the termination date for his conditional release supervision. Thereafter, on two occasions subsequent to September 12, 1994, the Commission issued warrants for Andrews' arrest based upon alleged violations of the terms his conditional release.[1] DOC took custody of Andrews pursuant to these warrants.
The trial court initially denied the motion to dismiss but, upon motion for reconsideration, accepted the state's position and granted the motion to dismiss as to both defendants, reasoning
that under the facts alleged in the Complaint sovereign immunity bars recovery. Specifically, under the facts alleged, there is neither an underlying common law or statutory duty of care with respect to the alleged negligent conduct, which would give rise to an individual cause of action for the Plaintiff. The remedy for the Plaintiff and others similarly situated is through appeal, writ of mandamus, habeas corpus,[[2]] or similar review. Additionally, the claim for false imprisonment is barred because Plaintiff was taken into custody upon a valid warrant, even if issued because of some alleged negligence.
This appeal followed.

Standard of Review
We review the order granting the motion to dismiss de novo. See Rittman v. Allstate Ins. Co., 727 So.2d 391, 393 (Fla. 1st DCA 1999) ("The sufficiency of a complaint in a civil action is a question of law."). In ruling on the motion, the trial court had to accept as true all well-pleaded allegations of the complaint and limit its consideration of factual matters to the four corners of the complaint. See Brewer v. Clerk of the Circuit Court, 720 So.2d 602, 603 (Fla. 1st DCA 1998); Varnes v. Dawkins, 624 So.2d 349, 350 (Fla. 1st DCA 1993). A reviewing court operates under the same constraints. See Rittman, 727 So.2d at 393; McKinney-Green, Inc. v. Davis, 606 So.2d 393, 394 (Fla. 1st DCA 1992).

Negligence Claims
As a preliminary matter, we dispose of those allegations of the complaint seeking to impose liability upon both the Commission and DOC based upon their alleged breach of duties placed upon them by statute. It is clear to us that the statutes invoked, specifically, sections *1261 944.275[3] and 947.1405,[4] are simply a part of an overall statutory scheme whose sole purpose is the protection of the public through a system of apprehension, conviction and incarceration of criminal offenders. These statutory provisions, and other related provisions, create no duty on the part of the Commission or DOC for the benefit of any private person, and thus afford no basis for an action by any aggrieved individual for alleged negligence or errors in their application or enforcement. See Vann v. Department of Corrections, 662 So.2d 339, 340 (Fla.1995) ("A governmental duty to protect its citizens is a general duty to the public as a whole, and where there is only a general duty to protect the public, there is no duty of care to an individual citizen which may result in liability.") (quoting Everton v. Willard, 468 So.2d 936 (Fla.1985)).

False Imprisonment Claims
Appellant argues that even in the absence of a statutory duty, DOC and the Commission are liable for damages for the common law tort of false imprisonment. We hold that under the facts alleged there is no liability on the part of either party for false imprisonment.
Florida's highest court has clearly established that the doctrine of judicial immunity exists in Florida apart from the concept of sovereign immunity; that this type of immunity embraces persons who exercise a judicial or quasi-judicial function; and that this immunity is unaffected by Florida's waiver of sovereign immunity. See Office of State Attorney, Fourth Judicial Circuit of Florida v. Parrotino, 628 So.2d 1097 (Fla.1993). In our view, the Commission was clearly acting in a quasi-judicial capacity in establishing the terms and length of Andrews' conditional release, and in the issuance of the warrants for his arrest and re-commitment to the custody of DOC. These duties, expressly imposed upon the Commission by the provisions of section 947.1405, require a determination and consideration of numerous factors concerning the inmate after an inmate review by a member of the Commission and a review of the inmate's record by the Commission before it finally acts. The Commission is the agency charged with the initial responsibility for interpreting the "Conditional Release Program Act," which it must then apply based upon the circumstances presented by a particular inmate's record. This of necessity includes interpretation of the sentences and offenses of which the inmate is convicted, the dates of *1262 the offenses, and a determination of the expiration date of the maximum sentence imposed by the court. Although DOC under section 944.291 is required to provide the Commission with the name and inmate identification number for each eligible inmate, the responsibility for an inmate's actual conditional release is solely with the Commission.
We conclude that the Commission functions in a quasi-judicial capacity in carrying out its duties under the statute.[5] Among the enforcement powers given to the Commission, under section 947.141, is the power to issue a warrant, after a probable cause determination, for the arrest of a releasee for his or her violation of the terms and conditions of his or her release. Because "[t]he issuance of a ... warrant is unquestionably a judicial act," Burns v. Reed, 500 U.S. 478, 492, 111 S.Ct. 1934, 1942, 114 L.Ed.2d 547 (1991), the Commission's functions under the statute, if not virtually indistinguishable from, are at least "functionally comparable" to, those of a judge. See Imbler v. Pachtman, 424 U.S. 409, 423 n. 20, 96 S.Ct. 984, 991 n. 20, 47 L.Ed.2d 128 (1976) ("It is the functional comparability of their judgments to those of the judge that has resulted in both grand jurors and prosecutors being referred to as `quasi-judicial' officers, and their immunities being termed `quasi-judicial' as well.").
To a large extent, the Commission, and to some extent DOC, operate as the "arm of the sentencing judge,"[6] in that sentences from the courts are for terms of months, or years, rather than specific release dates,[7] and the daunting task of converting those sentences into definite periods of incarceration, through the application of a maze of ever-changing statutes, is left to these agencies. It would be ironic indeed if the decision of the Commission in this case, based upon its assessment of the facts or its misinterpretation or misapplication of the statute, could be found to subject the Commission to tort liability, while the actions of the trial courts in Westlund and Cooper, considering the same facts and interpreting the same law, would be protected by total immunity.
The language of section 947.1405(6), admonishing that the length of supervision "must not exceed the maximum penalty imposed by the court," taken literally, and without proper consideration of constitutional ex post facto implications, can be interpreted, as did the Commission, to mean that supervision could extend for the entire sentence being served by an inmate subject to conditional release, rather than only that portion of the sentence being served for his post-October 1, 1998, offenses. Of course, with the clear vision of hindsight, particularly after Westlund, it becomes much easier to determine that the Commission's reading does not pass muster. On the other hand, the nuances of the ex post facto effect on statutory interpretation frequently present issues upon which even the most seasoned appellate judges often disagree. See State v. Lancaster, 731 So.2d 1227 (Fla.1998) (noting *1263 historic differences of opinion between Florida Supreme Court and United States Supreme Court on ex post facto issues arising in the context of statutory early release programs).
Apparently recognizing the quasi-judicial nature of the functions of the Commission, Andrews nevertheless urges that the Commission should have known that it had "lost jurisdiction" at the time it issued the warrants for his arrest. Citing to Farish v. Smoot, 58 So.2d 534 (Fla.1952), Waters v. Ray, 167 So.2d 326 (Fla. 1st DCA 1964), and Beckham v. Cline, 151 Fla. 481, 10 So.2d 419 (1942), Andrews maintains that when a judicial or quasi-judicial officer exercises jurisdiction where he has none, there is no immunity for false imprisonment. While we do not disagree with this general statement of the law, the cases cited are so factually dissimilar from this case as to render them inapposite. As noted by the court in Berry v. State, 400 So.2d 80 (Fla. 4th DCA 1981), judges are not liable in civil actions for their judicial acts, even when such acts are "in excess of their jurisdiction." Id. at 83 (quoting the landmark case on judicial immunity of Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1871)). For the same reasons, prosecutors enjoy absolute immunity for acts "within the scope of [their] prosecutorial duties." Id. at 84. Immunity, as stated in Forrester v. White, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) "is justified and defined by the functions it protects and serves, not by the person to whom it attaches." Id. at 227, 108 S.Ct. at 544 (emphasis added).
We hold that the Commission was acting within the scope of its quasi-judicial duties when it placed Andrews on conditional release. It clearly had jurisdiction over Andrews, and had jurisdiction under the statute to fix the terms and conditions of his conditional release.[8] That the Commission's misapplication of the statute as applied to Andrews' particular circumstances resulted in incarceration beyond the time permitted does not justify an action for false imprisonment. To rule otherwise would be to hold that an officer, whether judicial or quasi-judicial, may be viewed as acting within his or her jurisdiction only when acting without error. We do not understand that to be the intent of the law.
With regard to DOC, even if the warrants upon which Andrews had been arrested were issued improperly by the Commission based upon a mistake as to the facts or the law, the trial court correctly dismissed the false imprisonment claim against DOC, because DOC was entitled to accept the warrants as lawful, as they were regular on their face and issued by a legal body having authority to issue warrants. Cf. Erp v. Carroll, 438 So.2d 31, 40 (Fla. 5th DCA 1983) (noting that even if a prosecution is commenced and carried out maliciously, "the imprisonment is under process regular and in legal form issued by lawful authority and the resulting imprisonment is not false"). The complaint alleged that Andrews had been arrested and incarcerated upon warrants issued by the Commission, and there was no allegation of any irregularity of the process other than the claim that they were issued "without jurisdiction," an argument we have rejected in our preceding discussion.[9]

*1264 Conclusion

It is not our purpose to attempt to minimize the deprivation of liberty of which appellant complains in this case. It is fair, however, to discuss some additional aspects of this case that appear to us to support the soundness of the result we reach. As stated above, the complaint alleged that Andrews had been convicted of pre-October 1, 1988 offenses for which he received a sentence of thirty months, and for post-October 1, 1988 offenses for which he received an additional thirty month sentence, the sentences to run consecutively. Absent the existence of various gain time statutes, Andrews would have been incarcerated continuously from April 1, 1991 until approximately March 31, 1996, less credit for any time served prior to sentence, which is not disclosed by the complaint. By comparison, the duration of his total actual confinement after being sentenced, including the alleged excess eleven-month period, amounts to approximately thirty-five months. In addition, Andrews was lawfully on conditional release supervision for approximately fifteen months. Although as we indicated earlier, gain-time and conditional release statutes are for the protection of the public, Andrews and others similarly situated incidentally benefit from these statutes by having their sentences reduced.
Although it is not our task to render decisions based upon matters of policy, there is reason to question whether the State could or would maintain its programs of early release, by whatever mechanism, if tort actions such as the one before us could be brought by aggrieved inmates. In this vein we find instructive the reasoning of the court in Martinez v. California, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), in which the court held constitutional a statute shielding from liability its public agencies and employees for any injury resulting from a decision whether or not to parole, release, or revoke the parole or release of a prisoner. The court held that the California Legislature could reasonably conclude that judicial review of a parole officer's decisions could inhibit the exercise of discretion, stating,
That inhibiting effect could impair the State's ability to implement a parole program designed to promote rehabilitation of inmates as well as security within prison walls by holding out a promise of potential rewards.
Id. at 283, 100 S.Ct. at 558. We think the same reasoning applies with equal effect here; we are therefore confident that the legislature in enacting section 768.28 could not and did not intend to waive any quasi-judicial immunity enjoyed by the Commission and DOC. The existence of adequate remedies for inmates, including appeal, mandamus and habeas corpus, precludes the necessity or advisability of doing away with the immunities that protect such officials for acts within the scope of their official duties. Yet, because the question in this case concerning the Commission's and DOC's liability for false imprisonment is an important one with statewide implications, we certify the following to the Florida Supreme Court as a question of great public importance:
WHETHER THE DEPARTMENT OF CORRECTIONS AND THE PAROLE COMMISSION ARE AMENABLE TO SUIT FOR FALSE IMPRISONMENT WHERE THE PAROLE COMMISSION ESTABLISHED THE TERMS AND CONDITIONS OF AN INMATE'S CONDITIONAL RELEASE PURSUANT TO SECTION 947.1405, FLORIDA STATUTES (1989), BUT THROUGH AN ALLEGED ERROR IN DETERMINING THE INMATE'S RELEASE DATE, THE INMATE *1265 WAS SUBJECTED TO INCARCERATION FOR MORE THAN ELEVEN MONTHS BEYOND THE MAXIMUM RELEASE DATE PERMITTED BY THE STATUTE?
For the reasons stated, the judgment appealed from is affirmed.
BOOTH, J., concurs; BENTON, J., concurs in part and dissents in part with written opinion.
BENTON, J., concurring in part and dissenting in part.
At issue here is whether money damages may be awarded where executive branch operational errors result in unlawful detention. Because the unconditional release of a prisoner who has served his sentence (and is not subject to some other hold) is not discretionary,[10] I respectfully dissent from today's judgment insofar as it affirms dismissal of the false imprisonment claim.
More than a year after Mr. Andrews's sentence[11] had expired, his complaint alleges, the Florida Parole Commission and the Department of Corrections (DOC) had him arrested and imprisoned him. On two separate occasions[12] he was illegally detained for a total of more than eleven months, according to the complaint,[13] even though he repeatedly complained that his re-incarcerations were illegal, filed numerous grievances with DOC, and specifically cited the controlling decision in Westlund v. Florida Parole Comm'n, 637 So.2d 52, 55 (Fla. 1st DCA 1994) (requiring calculation of the "last date of conditional release supervision based only on offenses committed on or after October 1, 1988").
Neither the Parole Commission nor DOC enjoys immunity from suit for false imprisonment, in my view, on the facts Mr. Andrews alleges. Insofar as the court's judgment today affirms dismissal of the claim based on the breach of duties sections 944.275 and 947.1405, Florida Statutes (1993), allegedly impose, I concur.[14] *1266 But neither DOC nor the Commission is immune from suit for false imprisonment. Once a sentence expires, the duties of DOC and the Commission alike become operational only. Conditional release becomes unconditional. Agency discretion is at an end.

I.
Sovereign immunity is not a bar to a claim for false arrest. See Johnson v. State Dep't of Health and Rehabilitative Servs., 695 So.2d 927, 929 (Fla. 2d DCA 1997); Thomas v. Florida Game and Fresh Water Comm'n, 627 So.2d 541, 542 (Fla. 2d DCA 1993); Lester v. City of Tavares, 603 So.2d 18, 19 (Fla. 5th DCA 1992). Nothing supports a distinction "between an individual who is wrongfully deprived of his liberty before his jail term starts and one wrongfully deprived of his liberty after his jail term ends." Sullivan v. County of Los Angeles, 12 Cal.3d 710, 117 Cal.Rptr. 241, 527 P.2d 865, 868 (1974) (In Bank). See also Whirl v. Kern, 407 F.2d 781, 792 (5th Cir.1968) (applying Texas law in holding that a sheriff can be found liable in his official capacity for false imprisonment for failure to release a prisoner once judicial authorization to hold expires).
Since private persons who had detained Mr. Andrews unlawfully for more than eleven months would have been liable for damages, DOC and the Parole Commission are not immune from suit.[15] "False imprisonment is the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and deprivation of his liberty." Johnson, 155 Fla. at 171, 19 So.2d at 700. Because false imprisonment and false arrest are essentially the same tort, see Weissman v. K Mart Corp., 396 So.2d 1164, 1165 n. 1 (Fla. 3d DCA 1981)("False arrest and false imprisonment are different labels for the same cause of action."), Florida case law is clear that section 768.28(5) waives sovereign immunity for the tort of false imprisonment. See Thomas, 627 So.2d at 542.
What has been said of law enforcement officers generally is also true of DOC personnel and the Parole Commission's employees:
"Under the common law, law enforcement officers were considered arms of the King and while an officer might be held liable for his wrongful acts the Government or that branch of the Government for which he acted, could not be held liable on the theory that `The King can do no Wrong', or the theory of Governmental or sovereign immunity." Kennedy v. City of Daytona Beach, 132 Fla. 675, 677, 182 So. 228, 229 (1938). Article X, Section 13 of the Florida Constitution (1968) recognizes sovereign immunity of this kind which, however, it authorizes the Legislature to waive by making "[p]rovision ... by general law for bringing suit against the state." "Section 768.28, Florida Statutes (1993), waives governmental immunity from tort liability `under circumstances in which the state or [an] agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state.' § 768.28(1), Fla.Stat. (1993)." Department of Health and Rehabilitative *1267 Servs. v. B.J.M., 656 So.2d 906, 911 (Fla. 1995)[.]
White v. City of Waldo, 659 So.2d 707, 709-10 (Fla. 1st DCA 1995). The claim here is not against any employee individually,[16] however, but against DOC and the Parole Commission themselves, executive branch agencies as to which the Legislature has provided:
The state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, but liability shall not include punitive damages or interest for the period before judgment. Neither the state nor its agencies or subdivisions shall be liable to pay a claim or a judgment by any one person which exceeds the sum of $100,000 or any claim or judgment, or portions thereof, which, when totaled with all other claims or judgments paid by the state or its agencies or subdivisions arising out of the same incident or occurrence, exceeds the sum of $200,000.
§ 768.28(5), Fla. Stat. (1993). The statute makes no exception for false arrest or false imprisonment and does not exclude prisoners or former prisoners as potential plaintiffs.

II.
Our supreme court explained In Henderson v. Bowden, 737 So.2d 532, 537-38 (Fla.1999), that the distinction between operational and discretionary duties grows out of the separation of powers between the judicial and the executive branches:
In reaching this conclusion, we stated:
In general, the Court consistently has held that liability may exist when the act of the government or its agent is not discretionary, but operational in nature. The question here is whether the police officers' acts fell in one or the other category.
. . . .
... [G]overnmental immunity derives entirely from the doctrine of separation of powers, not from a duty of care or from any statutory basis. See art. II, Sec. 3, Fla. Const. Accordingly, the term "discretionary" as used in this context means that the governmental act in question involved an exercise of executive or legislative power such that, for the court to intervene by way of tort law, it inappropriately would entangle itself in fundamental questions of policy and planning. See Department of Health and Rehabilitative Services v. Yamuni, 529 So.2d 258, 260 (Fla.1988). An "operational" function, on the other hand, is one not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented....

*1268 . . . .
While the act in question in this case certainly involved a degree of discretion, we cannot say that it was the type of discretion that needs to be insulated from suit. Intervention of the courts in this case will not entangle them in fundamental questions of public policy or planning. It merely will require the courts to determine if the officers should have acted in a manner more consistent with the safety of the individuals involved.

Kaisner [v. Kolb], 543 So.2d [732,] 736-38 [(Fla.1989)].
To defer to the executive branch in the circumstances of the present case would be to countenance executive-branch usurpation both of the legislative prerogatives exercised in enacting the statutes governing gain-time and supervised release and of the quintessentially judicial function of sentencing.
Governmental immunity precludes judicial scrutiny of agency action in a suit for personal injury if the agency action in question is discretionary, but not if it is operational. See Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010, 1020 (Fla.1979); see also State, Dep't of Health and Rehabilitative Servs. v. Lee, 665 So.2d 304, 305-06 (Fla. 1st DCA 1995). In deciding not to arrest, a police officer exercises agency discretion for which, under the doctrine of sovereign immunity, the police agency cannot be called to account in a suit for damages.[17]See Everton v. Willard, 468 So.2d 936, 938-39 (Fla. 1985). But the
lack of a common law duty for exercising a discretionary police power function must ... be distinguished from existing common law duties ... applicable to the same officials or employees ... during the course of their employment to enforce compliance with the law.... [T]he waiver of sovereign immunity now allows actions against all governmental entities for violations of those duties.... See, e.g., Crawford v. Department of Military Affairs, 412 So.2d 449 (Fla. 5th DCA), review denied, 419 So.2d 1196 (Fla.1982) (negligent operation of vehicle).
Trianon Park Condominium Ass'n v. City of Hialeah, 468 So.2d 912, 920 (Fla.1985). Once a police officer makes the decision to arrest, the police agency can be held liable if a tort is committed in effecting the arrest. See City of Pinellas Park v. Brown, 604 So.2d 1222, 1226 (Fla.1992).
Courts ought not interfere in an executive branch agency's lawful exercise of discretion to enforce laws for which the Legislature has assigned it responsibility.[18] But an executive branch agency does not *1269 enjoy immunity from suit when its employees act on its behalf wholly outside boundaries the Legislature and the courts have laid down. See Thomas, 627 So.2d at 542 ("Sovereign Immunity does not bar an action for false arrest."); E.J. Strickland Constr. v. Department of Agric. and Consumer Servs., 515 So.2d 1331, 1335-36 (Fla. 5th DCA 1987).
Mr. Andrews was not, under the facts alleged in the complaint, "a person who [wa]s properly the subject of an arrest." Lester, 603 So.2d at 19. Once his sentences expired, the Parole Commission did not have the discretion the hypothetical police officer in Lester had.
[T]here is a body of law in Florida recognizing liability for false arrest by a law enforcement officer. See, e.g., LeGrand v. Dean, 564 So.2d 510 (Fla. 5th DCA 1990), rev. denied, 576 So.2d 288 (Fla.1991) and cases cited therein. There is no sovereign immunity for false arrest and the lower court erred in dismissing the false arrest count on that basis. See Maybin v. Thompson, 514 So.2d 1129, 1131 (Fla. 2d DCA 1987); Richardson v. City of Pompano Beach, 511 So.2d 1121, 1123 (Fla. 4th DCA 1987), rev. denied, 519 So.2d 986 (Fla. 1988).
Lester, 603 So.2d at 19 (footnote omitted). The complaint states a claim for false imprisonment for which governmental immunity is no bar. See generally City of Homestead v. Suarez, 591 So.2d 1125, 1126 (Fla. 3d DCA 1992); City of Miami v. Swift, 481 So.2d 26, 27-28 (Fla. 3d DCA 1985); City of West Palm Beach v. Whittemore, 453 So.2d 507, 508 (Fla. 4th DCA 1984).

III.
"This is not a case of judicial error. The [allegedly] illegal detention was the result of nothing which the commitment directed." Waterman v. State, 1 A.D.2d 235, 149 N.Y.S.2d 381, 382 (1956), aff'd, 2 N.Y.2d 803, 159 N.Y.S.2d 702, 140 N.E.2d 551 (1957). Nor is this a case of quasi-judicial error. While "the Commission was acting within the scope of its quasi-judicial duties when it placed Andrews on conditional release," ante, at 1263, the Parole Commission's quasi-judicial duties came to an end when the second sentence came to an end.
Whether Mr. Andrews should have been imprisoned for a total of more than eleven months after his sentences had expired did not hinge on "a determination and consideration of numerous factors concerning the inmate after an inmate review by a member of the Commission and a review of the inmate's record by the Commission before it finally act[ed]." Ante, at 1261. The single dispositive factor, under the facts pleaded, was full service of both sentences.
No quasi-judicial statutory interpretation was required because the Westlund case had been decided. On the facts alleged, thirty months was the maximum period of supervisionin or out of prison authorized by the sentence on which Mr. Andrews was conditionally released. The executive branch's "misinterpretation or misapplication of the statute," ante at 1262, to the contrary was, as pleaded, an operational error.[19]
The determinative facts were the dates of the offenses, the dates of sentencing, *1270 and the length of the sentences (thirty months each), all presumably apparent to DOC and the Parole Commission from their copies of judicial records. No quasi-judicial fact-finding was required.
The Parole Commission did not have quasi-judicial or any other discretion to disregard the holding in Westlund. The Parole Commission was a party to the Westlund litigation and was therefore unquestionably aware[20] of the decision, which was, of course, binding on it. By the time the warrants that resulted in his reincarceration issued, the complaint alleges, both sentences had expired.[21]
DOC is an executive branch agency charged with faithfully implementing sentences imposed by the courts. "Administrative agencies are creatures of statute and have only such powers as statutes confer. State ex rel. Greenb[e]rg v. Florida State Board of Dentistry, 297 So.2d 628, 634 (Fla. 1st DCA 1974)." Fiat Motors of N. Am. v. Calvin, 356 So.2d 908, 909 (Fla. 1st DCA 1978). See Art. I, § 18, Fla. Const. ("No administrative agency shall impose a sentence of imprisonment, nor shall it impose any other penalty except as provided by law." (emphasis supplied)).
Pearson v. Moore, 767 So.2d 1235, 1238-39 (Fla. 1st DCA 2000). "As part of the executive branch, DOC lacks the power to adjudicate the legality of a sentence or to add or delete sentencing conditions." Id. Upon expiration of the second sentence, no quasi-judicial decision-making authority remained in either defendant.[22] Under Article II, section three of the Florida *1271 Constitution, the errors alleged here were not erroneous judicial or quasi-judicial rulings, but executive-branch operational errors.

IV.
Under the criteria[23] set out in Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla.1979), and in keeping with the separation of powers required by our constitution, Art. II, § 3, Fla. Const., the defendants had no discretion to issue warrants[24] after the period of lawful supervision expired.
The allegation herewhich we are bound to accept as trueis that the Parole Commission's lawful supervisory authority over appellant terminated on September 12, 1994, before the first warrant issued. The Parole Commission has authority to issue warrants in certain circumstances, to be sure. § 947.141(1), Fla. Stat. (1995). But the Parole Commission can lawfully authorize the arrest only of offenders who are lawfully under conditional release or other statutorily authorized supervision.[25]
The Parole Commission relied on its own determination, not that of a third-party, in asserting a lawful basis to order Mr. Andrews' arrest. It does not, therefore, enjoy the protection from liability[26] *1272 that a police officer acting pursuant to judicial warrant[27] does. Cf. Jackson v. Navarro, 665 So.2d 340, 341-42 (Fla. 4th DCA 1995). Arrest warrants that the Commission itself issued ultra vires cannot shield it from suit.

V.
DOC reasonably relies on Commission warrants only where a prisoner's sentence has not expired before the warrants issue. Where the sentencing documents under which a prisoner is committed to DOC demonstrate that judicial authority to imprison is at an end, DOC cannot lawfully continue to hold the prisoner, whatever the Parole Commission does. Here, the allegation is that the sentence had expired. DOC has an independent duty not to imprison people unlawfully.
While the DOC and the Parole Commission are distinct entities, the executive branch is bound to comply with legislative enactments and judicial decisions whether it acts through one agency or two. See Pearson, 25 Fla. L. Weekly at D1940 ("At issue is the separation of powers between the judicial and executive branches."). The contention that DOC should be able to rely on Parole Commission warrants in circumstances like those alleged in the present case does not bear scrutiny.

VI.
On the facts alleged, at the time the Parole Commission issued the warrants, it had no more legal authority to issue warrants for Mr. Andrews's arrest and DOC had no more legal authority to hold him prisoner than either agency had to order the arrest and imprison a person never accused of a crime. The complaint fairly alleges operational errors by executive branch agencies, in contradistinction to quasi-judicial rulings or authorized public policy choices. "[F]alse imprisonment liability may be based on the state's failure to comply with statutes mandating the release of prisoners." Bennett v. Ohio Dep't of Rehabilitation and Correction, 60 Ohio St.3d 107, 573 N.E.2d 633, 637 (1991). See Whirl, 407 F.2d at 792; Sullivan, 117 Cal. Rptr. 241, 527 P.2d at 868; Waterman, 149 N.Y.S.2d at 382. To the extent the judgment below holds otherwise, it should be reversed.
NOTES
[1] So far as appears from his complaint, at no time did Andrews challenge the Commission's charge that he violated the terms of his conditional release.
[2] The complaint alleged not that Andrews is presently unlawfully detained but that earlier he had been twice detained unlawfully for a total of more than eleven months. Money damages are not ordinarily available in habeas corpus proceedings. See Flournoy v. Moore, 752 So.2d 35 (Fla. 1st DCA 2000), rev. denied, No. SC00-569, 767 So.2d 456 (Fla. July 7, 2000).
[3] Section 944.275 is the basic gain-time statute. A related section, 944.291, restricts release of certain offenders by providing for their release only upon conditional release as prescribed by section 947.1405. Section 944.291 also requires DOC to certify to the Commission the names and identification numbers of eligible inmates.
[4] Section 947.1405, the "Conditional Release Program Act," provides, in paragraph (2), in its entirety, and paragraph (6), in part, as follows:

(2) Any inmate who:
(a) Is convicted of a crime committed on or after October 1, 1988, and before January 1, 1994, and any inmate who is convicted of a crime committed on or after January 1, 1994, which crime is or was contained in category 1, category 2, category 3, or category 4 of Rule 3.701 and Rule 3.988, Florida Rules of Criminal Procedure (1993), and who has served at least one prior felony commitment at a state or federal correctional institution;
(b) Is sentenced as a habitual or violent habitual offender pursuant to § 775.084; or
(c) Is found to be a sexual predator under § 775.23,
shall, upon reaching the tentative release date or provisional release date whichever is earlier, as established by the Department of Corrections, be released under supervision subject to specified terms and conditions, including payment of the cost of supervision pursuant to s. 948.09.... A panel of no fewer than two commissioners shall establish the terms and conditions of any such release.... The commission shall also determine whether the terms and conditions of such release have been violated and whether such violation warrants revocation of the conditional release.
(6) ... The length of supervision must not exceed the maximum penalty imposed by the court.
[5] Cases are legion declaring parole commissions protected by quasi-judicial immunity. See, e.g., Sellars v. Procunier, 641 F.2d 1295 (9th Cir.1981) (tracing the development of the rule of quasi-judicial immunity from the common law to its extension to modern-day parole boards, which were unknown at common law). The Sellars court held parole board members entitled to absolute immunity from suits by prisoners for actions taken "when processing parole applications." Id. at 1302; see also Walrath v. United States, 35 F.3d 277 (7th Cir.1994) ("Most federal courts ... have consistently held that parole board members are absolutely immune from suit for their decisions to grant, deny, or revoke parole.").
[6] See Bricker v. Michigan Parole Board, 405 F.Supp. 1340, 1345 (E.D.Mich.1975) ("In deciding to grant, deny, or revoke parole, [parole board officials] act in a quasi-judicial capacity, as an arm of the sentencing judge....") (emphasis added).
[7] See Fleming v. State, 697 So.2d 1322 (Fla. 5th DCA 1997) ("[T]he sentence [the defendant] received for his crimes is a term of years, not a specific release date.").
[8] The complaint alleged no error on the part of DOC or the Commission in subjecting appellant to conditional release supervision. From the complaint it affirmatively appears that Andrews was released by the Commission on conditional release on May 28, 1993, and from that date until September 12, 1994, a period of more than fifteen months, he was properly being supervised by the Commission. There is no allegation that during this period, nor at any time prior to his re-incarceration on December 9, 1994, did Andrews request review, reconsideration or correction of the term of his conditional release supervision which, as he was well aware, had been ordered to extend to December 25, 1995.
[9] We have examined the decisions from other jurisdictions cited by Andrews in which the courts imposed liability for false imprisonment. Our review indicates that these cases involve facts and statutory provisions so different from those before us as to provide little guidance for our decision. Cf. Sullivan v. County of Los Angeles, 12 Cal.3d 710, 117 Cal. Rptr. 241, 527 P.2d 865 (1974); Williams v. State, 5 A.D.2d 936, 172 N.Y.S.2d 206 (1958). Furthermore, decisions from other jurisdictions must be viewed within the framework of that jurisdiction's constitutional, legislative, and judicial treatment of the doctrine of governmental immunity, which may vary considerably from Florida's.
[10] For failure to perform this ministerial duty, habeas corpus or mandamus will lie. See Steele v. State, 733 So.2d 1117, 1118 (Fla. 4th DCA 1999) ("If, upon the filing of a mandamus petition, it appears that appellant would be entitled to immediate release from incarceration if properly credited with the time he is seeking, the petition should be treated as a petition for writ of habeas corpus."). See also Harrison v. State, 667 So.2d 382, 383 (Fla. 1st DCA 1995); Cohen v. Vendrell, 535 So.2d 320, 322 (Fla. 3d DCA 1988); Diggs v. Department of Corrections, 503 So.2d 412, 414 (Fla. 1st DCA 1987).
[11] Under two consecutive thirty-month sentences the trial court imposed on April 1 and 4, 1991, the complaint alleges, the last lawful date of conditional release supervision for Mr. Andrews was September 12, 1994. See Evans v. Singletary, 737 So.2d 505, 507 (Fla.1999) ("This Court held in Cooper and further clarified in Pressley [v. Singletary, 724 So.2d 97 (Fla.1997)] that the State could place an inmate on Conditional Release supervision for a period of time determined only by the eligible sentence...."); Parole Commission v. Cooper, 701 So.2d 543, 545 (Fla.1997) (holding that "an inmate's last date of conditional release supervision should lawfully be calculated with reference only to sentences covered under the Act" and citing Westlund v. Florida Parole Commission, 637 So.2d 52 (Fla. 1st DCA 1994) with approval).
[12] He was originally released on May 28, 1993, according to the complaint, and, after being taken into custody on December 9, 1994 (pursuant to a warrant the Commission issued after September 12, 1994) was restored to conditional release on January 31, 1995, when the original order of conditional release was reinstated. He was arrested on a second Commission warrant on December 28, 1995, according to the complaint, and was finally released unconditionally only more than ten months thereafter on October 17, 1996.
[13] For purposes of the motion to dismiss, DOC and the Commission admitted the allegations of the complaint. See, e.g., Brewer v. Clerk of Circuit Court, 720 So.2d 602, 603 (Fla. 1st DCA 1998).
[14] These provisions create no "statutory duty of care with respect to the alleged negligent conduct." Trianon Park Condominium Ass'n v. City of Hialeah, 468 So.2d 912, 917 (Fla. 1985). Dismissal of this claim precludes award of the "additional special damages" Mr. Andrews's complaint sought, viz., recovery of costs allegedly paid to DOC "of supervision... for the months following September, 1994, until his re-incarcerat[ion]."
[15] A private person may be required to answer in damages for the common-law tort of false imprisonment, see Fisher v. Payne, 93 Fla. 1085, 1093, 113 So. 378, 380 (1927), which is closely related to the tort of false arrest. See Johnson v. Weiner, 155 Fla. 169, 171, 19 So.2d 699, 700 (1944) ("The action for false imprisonment is usually distinguishable in terminology only from the action for false arrest."); Weissman v. K-Mart Corp., 396 So.2d 1164, 1165 n. 1 (Fla. 3d DCA 1981). "[F]alse arrest is one way to commit false imprisonment; since an arrest involves a restraint, it always involves imprisonment." 32 Am.Jur.2d False Imprisonment § 3 (1995). See Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 317, 171 So. 214, 218 (1936) (holding that, to recover for a false arrest, the plaintiff must show "that the restraint was unreasonable and such as was not warranted by the circumstances").
[16] The complaint does not state a claim for damages against any individual. Unless the Parole Commission personnel who issued the warrants "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property," § 768.28(9)(a), Fla. Stat. (1993), they presumably enjoy immunity in their individual capacities. See also Montero v. Travis, 171 F.3d 757, 760 (2d Cir.1999) ("[Judicial] immunity also extends to administrative officials performing functions closely associated with the judicial process because the role of the `hearing examiner or administrative law judge ... is "functionally comparable" to that of a judge.' Butz v. Economou, 438 U.S. 478, 513, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)."); Anton v. Getty, 78 F.3d 393, 395-96 (8th Cir.1996); Walrath v. United States, 35 F.3d 277, 283 (7th Cir.1994); Russ v. Uppah, 972 F.2d 300, 303 (10th Cir.1992); Anderson v. Boyd, 714 F.2d 906, 909 (9th Cir.1983); Sellars v. Procunier, 641 F.2d 1295, 1303 (9th Cir.1981); Rivello v. Cooper City, 322 So.2d 602, 607 (Fla. 4th DCA 1975). But see Farish v. Smoot, 58 So.2d 534, 537-38 (Fla.1952) (en banc) (stating that not even a judge can avoid civil liability when acting in the clear absence of jurisdiction); Beckham v. Cline, 151 Fla. 481, 488-89, 10 So.2d 419, 422 (1942); McDaniel v. Harrell, 81 Fla. 66, 70-71, 87 So. 631, 632-33 (1921); Waters v. Ray, 167 So.2d 326, 329 (Fla. 1st DCA 1964).

Because Mr. Andrews has not sued any jailer or parole commissioner individually, many of the cases on which the majority opinion relies are not germane.
[17] On the other hand, a police officer's directing or allowing an intoxicated person to drive a car may result in liability on the part of the police agency for any injury to passengers the police officer had previously detained. See Henderson v. Bowden, 737 So.2d 532, 536 (Fla.1999). Such carelessness for the passengers' welfare does not fall within the category of "basic discretionary, judgmental decisions that are inherent in enforcing the laws of the state." Everton v. Willard, 468 So.2d 936, 939 (Fla.1985). See also Department of Health and Rehabilitative Servs. v. Yamuni, 529 So.2d 258, 260 (Fla.1988) ("[T]he actions of caseworkers investigating and responding to reports of child abuse simply cannot be elevated to the level of policy-making or planning."). But see Department of Health and Rehabilitative Servs. v. B.J.M., 656 So.2d 906, 916 (Fla.1995) (holding that sovereign immunity applies to HRS's "[d]ecisions on how to... rehabilitate a delinquent juvenile, ... [because they] are discretionary judgmental decisions to be made pursuant to the broad discretion vested in HRS by the legislature"); Seguine v. City of Miami, 627 So.2d 14, 15 (Fla. 3d DCA 1993) ("[A] police decision ... as to what precautions, if any, to employ in order to physically arrest an allegedly mentally disturbed or suicidal suspect is immune from tort liability because (1) such decision constitutes a discretionary police function, and (2) no special tort duty is owed by the police to such a potential arrestee under these circumstances."); Berry v. State, 400 So.2d 80, 86 (Fla. 4th DCA 1981) ("[T]he determination to grant parole is a discretionary, planning level decision which does not subject the state to tort liability.").
[18] Neither Mr. Andrews nor anybody else could have questioned in a suit for personal injury either his conditional release orbefore his sentence expiredany revocation of conditional release. See generally Martinez v. California, 444 U.S. 277, 280-81, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) (upholding statute immunizing parole board members from suit by survivors of victim murdered by parolee); Berry v. State, 400 So.2d 80, 86 (Fla. 4th DCA 1981) (finding parole commissioners immune from suit for granting parole, absent action "in direct contravention of a legislatively crafted and judicially imposed mandatory minimum sentence"). Both conditional release and revocationassuming the prisoner's sentence has not expiredare "policy-making,... or judgmental governmental functions [which] cannot be the subject of traditional tort liability." Commercial Carrier Corp., 371 So.2d at 1020. But this discretionary authority ends when the sentence ends.
[19] Before the second period of incarceration (which lasted some ten months) ever began, the complaint alleges, Mr. Andrews had spent more than thirty months on conditional release.
[20] The complaint alleges that the decision in Westlund v. Florida Parole Comm'n, 637 So.2d 52, 55 (Fla. 1st DCA 1994), came down some seven months before the first post-termination-of-sentence arrest and reincarceration and some nineteen months before the second post-termination-of-sentence arrest and reincarceration.
[21] By the time conditional release was revoked on December 28, 1995, the complaint alleges, Mr. Andrews had served more than thirty months on conditional release. If so, the thirty-month sentence imposed for the offense committed after October 1, 1988, had necessarily expired. Under section 947.1405(6), Florida Statutes (1991), incarceration plus supervision on conditional release authorized only for post October 1, 1988 offensescannot exceed "the maximum penalty imposed by the court."

The sentence imposed for the offense committed before October 1, 1988, had expired on May 28, 1993, the complaint alleges, because "once a prisoner is released from the remaining period of incarceration due to gain-time, that remaining period of the sentence is extinguished." Heuring v. State, 559 So.2d 207, 208 (Fla.1990); State v. Green, 547 So.2d 925, 926 (Fla.1989) ("A prisoner who is released early because of gain-time is considered to have completed his sentence in full."); see generally State v. Lancaster, 731 So.2d 1227, 1229-30 (Fla.1998).
[22] Unlike here, DOC and the Parole Commission must sometimes address open questions no court has yet resolved. In describing appellees' task in such situations as one of administering "a maze of ever-changing statutes" and as "daunting," the majority opinion assuredly hits the mark. Ante, at 1262. But the majority opinion continues:

It would be ironic indeed if the decision of the Commission in this case, based upon its assessment of the facts or its misinterpretation or misapplication of the statute, could be found to subject the Commission to tort liability, while the actions of the trial courts in Westlund and Cooper, considering the same facts and interpreting the same law, would be protected by total immunity.
Ironically or not, the law routinely distinguishes between tort liability for judicial as opposed to executive branch decision-making. Suits for false arrest or false imprisonment brought against police agencies could not have been maintained against courts, even if courts had committed the same errors in finding probable cause.
In contrast to the trial courts in Westlund and Cooper, moreover, DOC and the Parole Commission had the benefit of and were bound by the prior decision in Westlund v. Florida Parole Comm'n, 637 So.2d 52, 55 (Fla. 1st DCA 1994). Neither the Parole Commission nor DOC had the prerogative of "interpreting the same law" in a different way.
[23] The Florida Supreme Court has identified a four-part analysis for determining whether a function is discretionary or operational:

"(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?"
Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010, 1019 (Fla.1979) (quoting Evangelical United Brethren Church v. State, 67 Wash.2d 246, 407 P.2d 440, 445 (1965)). If the answer to each of the four questions is yes, the function is clearly discretionary. If not, further case-by-case analysis is required.
The court in Kaisner v. Kolb, 543 So.2d 732, 737 (Fla.1989), distinguished between the term "discretionary" and the term "operational" in this context:
the term "discretionary" as used in this context means that the governmental act in question involved an exercise of executive or legislative power such that, for the court to intervene by way of tort law, it inappropriately would entangle itself in fundamental questions of policy and planning. See Department of Health and Rehabilitative Servs. v. Yamuni, 529 So.2d 258, 260 (Fla. 1988). An "operational" function, on the other hand, is one not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented.
[24] When a judge issues a warrant, "[t]he issuance... is unquestionably a judicial act," Burns v. Reed, 500 U.S. 478, 492, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991), but when an executive branch agency issues a warrant, the issuance is plainly not the act of a judge.
[25] The majority opinion suggests that the Legislature might (prospectively) abolish conditional release if the Parole Commission or DOC is held accountable for failing to terminate conditional release supervision when sentences expire. One could argue with equal (not very persuasive) force that the Legislature might forgo incarceration of convicts, if DOC is held accountable for failing to release incarcerated prisoners upon expiration of their sentences. Here, it is alleged, the Parole Commission and DOC made both mistakes.
[26] Under the allegations of the complaint, the Parole Commission's liability for false imprisonment arises not from physically restraining the appellant, but from proximately causing his false imprisonment. The rule in Florida is:

To be liable in an action for false imprisonment, one must have personally and actively participated therein, directly or by indirect procurement. All those who, by direct act or indirect procurement, personally participate in or proximately cause the false imprisonment and unlawful detention are liable therefor.
Johnson v. Weiner, 155 Fla. 169, 19 So.2d 699, 701 (1944). Cf. Pokorny v. First Fed. Sav. & Loan Ass'n, 382 So.2d 678, 682 (Fla.1980) (holding "a private citizen may not be held liable in tort where he neither actually detained another nor instigated the other's arrest by law enforcement officers" (emphasis supplied)).
[27] If the police deliberately mislead or conceal material information from the judge or magistrate issuing the warrant, the warrant does not shield them from liability. See Malley v. Briggs, 475 U.S. 335, 340-41, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (noting that, under the common law, "one who procured the issuance of an arrest warrant by submitting a complaint could be held liable ... if the complaint was made maliciously and without probable cause."). Unlawful actions by the police can negate the protection offered by the warrant. See Jackson v. Navarro, 665 So.2d 340, 342 (Fla. 4th DCA 1995).