DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ROBERT ZOBA,** individually and on behalf of all others similarly
situated,
Appellant,

v.

**THE CITY OF CORAL SPRINGS, et al.,**
Appellee.

No. 4D14-1182

[March 9, 2016]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit,
Broward County; Carlos A. Rodriguez, Judge; L.T. Case No. 12-10596.

John Caserta of John Caserta, P.A., Delray Beach, for appellant.

Scott C. Cochran and W. Tucker Craig of Billing, Cochran, Lyles Mauro
& Ramsey, P.A., Fort Lauderdale, for appellee.

MAY, J.

The boundaries of judicial immunity are challenged in this appeal. The
plaintiff argues that the clerk of court ("clerk") is not entitled to judicial
immunity for collecting, apportioning, distributing, and retaining monies,
in conjunction with alleged illegal traffic fines. We disagree and affirm.

The plaintiff filed a proposed class action against four government
defendants, the City of Coral Springs ("city"), Broward County ("county"),
the Florida Department of Revenue ("DOR"), and the clerk (collectively
"defendants"), seeking a refund of traffic fines illegally charged and
collected. The amended complaint alleged that the county established a
school zone in violation of a county ordinance and that the school zone
created an unlawful "speed trap."

The plaintiff received a $600 traffic ticket for speeding in the school
zone. He paid his fine in full because failure to comply would result in the
suspension of his driver's license. Plaintiff's counsel received a ticket for
the same violation on a different date. He fought the ticket arguing that
the school zone was illegal because it was established in violation of county

ordinance 23-6(d). He was acquitted.

The plaintiff alleged in the amended complaint that the defendants have collected thousands of dollars from tickets originating in an illegally established school zone. He alleged the clerk collects, apportions, and distributes the fine monies to the defendants for those noncriminal traffic violations. Pursuant to Florida statutes, the city receives 50.8% of the fines, DOR receives 43.1%, the clerk receives 6.1%, and the county receives a surcharge of $12.50 per violation. As to the clerk specifically, he alleged the clerk "receives the payment of fines for violations of Florida Statute § 316.1895(10); in accordance with Florida Statutes § 318.21, 142.01." He alleged a claim for unjust enrichment against the clerk seeking "disgorgement of all monies illegally collected and accepted."

The clerk moved to dismiss the amended complaint based on judicial immunity. At the first hearing on the motion, the clerk argued that his collection of fines is part and parcel of the overall decision-making process for noncriminal traffic infractions, a discretionary judicial act. The plaintiff responded that the clerk is not entitled to judicial immunity because his collection and retention of fines for administrative costs is purely ministerial, nondiscretionary, and nonjudicial.

The trial court suggested that if the class prevailed, the clerk could agree to comply with orders requiring reimbursement of funds even if he did not remain a party. The court indicated it would ensure the clerk received notice of all hearings so that he could not later argue a denial of due process.

At the second hearing, the clerk advised that if dismissed, he would not agree to comply with any reimbursement order because he is entitled to absolute immunity from suit *and* damages. The plaintiff responded that no governmental body is entitled to keep funds collected as a result of an illegal school zone because it violates due process.

The trial court later entered a final order granting the clerk's motion to dismiss with prejudice. From that order, the plaintiff now appeals.

The plaintiff argues on appeal that the trial court erred in dismissing the clerk based on judicial immunity. He argues that because the clerk's receipt of money is a purely ministerial act, judicial immunity does not bar the unjust enrichment claim. Lastly, he argues the clerk's retention of illegally collected fines violates the due process clauses of the United States and Florida Constitutions.

The clerk responds that he was acting as an arm of the county court by collecting and enforcing the traffic fines. He argues this is a judicial act giving rise to immunity because it is done at the direction of a judge, pursuant to an administrative order, and is integrally related to the overall judicial process. He also argues that because the plaintiff failed to allege a constitutional violation in the complaint, he cannot argue on appeal that the collection of fines violates due process. Even if the plaintiff prevails, the clerk argues that he is entitled to retain the statutorily allotted portion of the civil penalties collected because the plaintiff voluntarily paid the ticket with knowledge of the facts.

We have de novo review. *Andrews v. Fla. Parole Comm'n*, 768 So. 2d 1257, 1260 (Fla. 1st DCA 2000).

"[J]udicial immunity 'insures that judges are immune from liability for damages for acts committed within their judicial jurisdiction [and] is essential to the preservation of an independent judiciary.'" *Fong v. Forman*, 105 So. 3d 650, 652 (Fla. 4th DCA 2013) (second alteration in original) (quoting *Berry v. State*, 400 So. 2d 80, 82–83 (Fla. 4th DCA 1981)). "This doctrine has been extended to quasi-judicial officials, such as a clerk of court, performing judicial acts." *Id.* (citations omitted). "The reason for extending immunity to quasi-judicial officers is because a strict guarantee of immunity is necessary to preserve the[ir] effectiveness and impartiality." *Fuller v. Truncale*, 50 So. 3d 25, 27–28 (Fla. 1st DCA 2010) (alteration in original) (citation omitted) (internal quotation marks omitted).

In Florida, the clerk is a quasi-judicial officer. *See Fong*, 105 So. 3d at 652. "The office of the clerk of the circuit court derives its powers and authority from . . . the Florida Constitution. . . . Article V, section 16, establishes the office of clerk of the circuit court within the judicial framework." *Times Pub. Co. v. Ake*, 645 So. 2d 1003, 1004–05 (Fla. 2d DCA 1994).

Two prerequisites must be met for judicial immunity to apply: "(1) the ruling in question [must be] a 'judicial act;' and (2) there [must be] jurisdiction to issue the ruling." *Fuller*, 50 So. 3d at 28 (citations omitted). "When these two prongs can be shown, the judge or quasi-judicial official may claim judicial immunity, even if the ruling in question was unwise, reckless, or malicious." *Id.* (citation omitted).

Significantly, "analysis of judicial immunity must focus upon the outcome of a particular action, instead of the act itself." *Id.* "Nonjudicial officials have absolute immunity for their duties that are integrally related to the judicial process. Absolute quasi-judicial immunity for nonjudicial

3

officials is determined by a functional analysis of their actions in relation to the judicial process." *Jenkins v. Clerk of Court, U.S. Dist. Court, S. Dist. of Fla.*, 150 F. App'x 988, 990 (11th Cir. 2005) (citing *Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994)).

Here, the parties disagree on which of the clerk's acts is the judicial act to be analyzed. The plaintiff argues the only act alleged in the amended complaint is the clerk's ultimate collection/receipt of 6.1% of the proceeds of the traffic fines. He argues the trial court erred by looking outside of the four corners of the complaint to examine how the clerk's act of receiving fines fits within the larger judicial process of handling traffic violations. The clerk responds that the act of receiving a percentage of the fine cannot be viewed in isolation. We agree with the clerk.

Section 316.1895, Florida Statutes, governs the establishment of school speed zones, enforcement, and designation. *See* § 316.1895, Fla. Stat. (2010). Subsection (10) provides that a "[v]iolation of the speed limits established pursuant to this section must be cited as a moving violation, punishable as provided in chapter 318." *Id.* § 316.1895(10). Section 318.14(1) provides that "any person cited for a violation of chapter 316 . . . is charged with a noncriminal infraction and must be cited for such an infraction and cited to appear before an official." § 318.14(1), Fla. Stat. (2010).

Section 318.14(4)(a) provides that a person charged with a noncriminal infraction, who does not elect to appear before an official within thirty days after the issuance of the citation shall: "1. Pay the civil penalty and delinquent fee, if applicable, either by mail or in person; or 2. Enter into a payment plan in accordance with s. 28.246 with the clerk of the court to pay the civil penalty and delinquent fee, if applicable." *Id.* § 318.14(4)(a).

If a person charged with a noncriminal traffic infraction elects to appear before an official at a hearing, the official "shall make a determination as to whether an infraction has been committed," and if one has been committed, "the official may impose a civil penalty." *Id.* § 318.14(5). However, if a person simply pays the citation or enters into a payment plan without appearing before an official, that person is "deemed to have admitted the infraction and to have waived his or her right to a hearing on the issue of commission of the infraction." *Id.* § 318.14(4)(b).

Section 28.246(3), Florida Statutes, provides that "[c]ourt costs, *fines*, and other dispositional assessments shall be enforced by order of the courts, *collected by the clerks of the circuit and county courts*, and disbursed in accordance with authorizations and procedures as

established by general law." § 28.246(3), Fla. Stat. (2010) (emphasis added). Rule 6.480(b) of the Florida Rules of Traffic Court also provides "the clerk, *under the authority of an administrative order*, may allow a reasonable amount of time before requiring the payment of civil penalties or costs." Fla. R. Traf. Ct. 6.480(b).

Section 318.21 governs the disposition of civil penalties by county courts and provides that "[a]ll civil penalties received by a county court pursuant to the provisions of this chapter shall be distributed and paid monthly as follows: . . . . (f) Five-tenths percent shall be paid to the clerk of the court for administrative costs." § 318.21(f), Fla. Stat. (2010). It also provides that if the violation occurred within a municipality, "5.6 percent shall be deposited into the fine and forfeiture trust fund established pursuant to s. 142.01." *Id.* § 318.21(g)2. Section 142.01, Florida Statutes, directs the clerk to establish "a separate fund to be known as the fine and forfeiture fund for use by the clerk of the circuit court in performing court-related functions." § 142.01, Fla. Stat. (2010).

These statutes and rules read together support the clerk's argument that his collection, apportionment, and disbursement of traffic fines is part and parcel of the overall judicial process. Prior to the fine collection, the person who has received the noncriminal traffic infraction may appear before a court, or may waive that right and simply pay the ticket or enter into a payment plan. Either way, the person participates in the adjudicatory process or waives it. The clerk's act of collection, apportionment, and disbursement is part of that judicial process—it is a judicial act entitling the clerk to immunity. And no one disputes the jurisdiction of the court and the clerk to perform their respective statutory duties.

*Fuller v. Truncale*, 50 So. 3d 25 (Fla. 1st DCA 2010), and *Fong v. Forman*, 105 So. 3d 650 (Fla. 4th DCA 2013), also support this conclusion. In *Fong*, we followed the First District's decision in *Fuller*. *Fong*, 105 So. 3d at 652–53. Both cases held the clerk's act of sending notices to the DMV with the recommendation to suspend someone's license without first scheduling a hearing was a "judicial act" protected by judicial immunity. *Fong*, 105 So. 3d at 653; *Fuller*, 50 So. 3d at 28–29.

In *Fuller*, the First District reasoned the clerk's license suspension recommendation was part and parcel of a judicial discretionary act. *Fuller*, 50 So. 3d at 29.

> [The clerk] lacked the power to suspend the licenses of those in the class, his recommendation was one step in that process.

> Without his recommendation, license suspension—which is obviously a discretionary judicial act—would not have occurred. Therefore, [the clerk] was engaging in a judicial act, not a ministerial one, when he recommended license suspension without scheduling a hearing.

*Id.* Turning to the second prong of the judicial immunity test, the First District held the clerk had jurisdiction to issue the license suspension notifications pursuant to a controlling administrative order. *Id.*

In *Fong*, we addressed the same issue. The plaintiffs "sought restitution in the form of a refund for the administrative fees they were required to pay in conjunction with the suspension of their licenses, and a declaration that the [c]lerk's 'policy or practice' was illegal." *Fong*, 105 So. 3d at 651–52. We found *Fuller* "directly on point and consistent with the established principle that a quasi-judicial official carrying out the directive of a judge is protected from suit by the doctrine of the judicial immunity." *Id.* at 653 (citation omitted).

Here, the collection and receipt of 6.1% of the proceeds of noncriminal traffic infractions is authorized by Florida statute. In addition, an administrative order authorized the clerk to "accept and defer payments up to 30 days, for a civil penalty, from the date the clerk processes the option for a civil penalty or other statutory costs or fees imposed hereunder." Admin. Order No. VI-99-A-3 § 5.c. (Fla. 17th Jud. Cir. Ct. Oct. 13, 1999).[1] The administrative order was a judicial act from which the clerk's duty to collect payments for citations stemmed.

Because the clerk's collection, apportionment, and distribution of the fines are both statutorily and judicially ordered, they fall within the protection afforded by judicial immunity. Similar to *Fuller* and *Fong*, the clerk's acts are part and parcel of the judicial process. In fact, in *Fuller* and *Fong*, it was the clerk's bypass of the hearing process, an allegation of wrongdoing on its part, which was the focus of the plaintiff's complaint.

---

[1] The plaintiff argues the clerk failed to preserve the administrative order argument as it did not rely on it when arguing to the trial court. We are, however, able to take judicial notice of the administrative order in resolving the issue. *See Sullivan v. State*, 913 So. 2d 762, 763 (Fla. 5th DCA 2005). Administrative Order VI-99-A-3 was later vacated and superseded by Administrative Order 2014-3-CO in February 2014. The current administrative order contains a similar provision to section 5.c., but authorizes the clerk to accept or defer payments only after a non-guilty plea. *See* Admin. Order No. 2014-3-CO § C.(2)b. (Fla. 17th Jud. Cir. Ct. Feb. 6, 2014).

Here, there is no allegation of wrongdoing by the clerk, but rather allegations that the clerk followed its statutory and judicial mandates.

The elephant in the room, however, is whether the clerk can ultimately be required to refund any of the monies it retained if the school zone is determined to be illegally established. The plaintiff argues that because the school zone is illegal by definition, the clerk's retention of the monies violates his constitutional rights.[2] The clerk argues it is immune from refunding any money.

In *Wilken v. North County Co.*, 670 So. 2d 181 (Fla. 4th DCA 1996), we addressed whether the clerk "must refund registry and sales fees to a successful bidder at a foreclosure sale where the mortgagor/debtor, prior to the sale and without written notice to the clerk, has filed a suggestion of bankruptcy in federal court, requiring the sale to later be invalidated." *Id.* at 181. We answered the question in the negative. *Id.*

> The holding in *Bauer* may be considered to stand for the proposition that the clerk "earns" the statutory sales and registry fees when the services are rendered, i.e., when the judicial sale takes place and the funds are received into the court registry. *Therefore, that the sale is later invalidated through no blunder of the clerk is of no consequence in determining whether or not the clerk is entitled to collect his or her administrative costs.*

*Id.* at 182 (emphasis added) (internal citations omitted) (citing *Bauer v. Resolution Trust Corp.*, 621 So. 2d 521, 522 (Fla. 4th DCA 1993)).

Here, if the school zone is found to be illegal, then a traffic fine for an infraction committed in the school zone is unconstitutional, but the administrative costs the clerk earned by statutorily collecting the fine are not. The clerk earned the costs for performing his statutorily and judicially directed job.

Judicial immunity bars the clerk from having to defend against the plaintiff's claim and incur attorney's fees. We therefore affirm the dismissal of the clerk.

We do not reach, however, whether funds retained by the clerk and

---

[2] The clerk argues that this argument is not preserved. We disagree. At both hearings, the plaintiff argued that the clerk is not entitled to keep money collected in violation of the law because it is unconstitutional.

deposited into the fine and forfeiture trust fund above the 0.5% for administrative costs are susceptible to a refund should the plaintiff prevail, as that issue has not yet been fully litigated in the trial court. In the complaint, the plaintiff alleged an unjust enrichment claim against the clerk seeking to recoup all monies paid and retained. Today, we hold the clerk immune from the underlying suit and defense of the suit, and affirm the trial court's decision on immunity.

What has yet to be litigated is whether the plaintiff can recoup monies paid to the clerk should he succeed in obtaining a favorable final judgment. There are several hurdles the plaintiff must first overcome: (1) proving the school zone was illegally created; (2) defending the voluntary payment waiver defense; and (3) whether the clerk must refund monies beyond the administrative fees authorized by statute. Wisely, the trial court foresaw the issue, but the case was not yet in the procedural posture for the trial court to rule on it. *See, e.g., State v. Barber*, 301 So. 2d 7, 9–10 (Fla. 1974). We save that issue for another day.

*Affirmed.*

JEFFREY DANA GILLEN, Associate Judge, concurs.
WARNER, J., dissents with opinion.

WARNER, J., dissenting.

Although I agree that the clerk of court can assert judicial immunity for the acts of collecting and distributing the traffic fines, including the administrative fee, I cannot agree that there is any judicial immunity for the *retention* of the portion of the fine which the clerk is allowed to keep in a fine and forfeiture fund pursuant to statute. That is directed by statute, not judicial discretion. *See* §§ 28.246(3); 318.21, Fla. Stat. (2010). In fact, pursuant to section 28.246(3), as quoted by the majority, such funds are disbursed "in accordance with authorizations and procedures *as established by general law*," not judicial authority. § 28.246(3), Fla. Stat. (emphasis added). The ultimate action is not judicial, but statutory. The clerk was not acting as an arm of the court in retaining the funds; he was retaining a portion of the funds at the legislative directive to help fund the clerk's office, the funding of which is a legislatively controlled action.

*Fong v. Forman*, 105 So. 3d 650 (Fla. 4th DCA 2013), and *Fuller v. Truncale*, 50 So. 3d 25 (Fla. 1st DCA 2010), are not on point. There, the plaintiffs were challenging the clerks' actions in the process of adjudicating traffic infractions and suspending drivers' licenses. Here, the plaintiff's claims are directed not at the judicial process, but at the retention of the

8

statutorily mandated fines by the clerk and others.  The amount of the fines and who is entitled to them is really not integral to the judicial process.

I would reverse the order of dismissal, as the clerk is not protected by judicial immunity for his retention, pursuant to statute, of funds collected from traffic citations, the ground upon which the dismissal was predicated.  While the majority opinion appears not to decide the issue of whether the clerk is judicially immune from being required to issue a refund, the refund is the subject of the suit and the relief requested, so the issue should be decided in this appeal.  Although the clerk raises the "voluntary payment doctrine" as a defense to this case, it was not raised by the clerk in the trial court.  It would be premature to dispose of this appeal on an unpled defense.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***